**FILED**

**7/31/2014**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

RECEIVED

JUL - 8 2014

THOMAS G. BRUTON
CLERK, U S DISTRICT COURT

## IN THE DISTRICT COURT OF THE UNITED STATES
## NORTHERN ILLINOIS DISTRICT
## EASTERN DIVISION

MELVIN CONWAY and PEOPLE OF )
THE STATE OF ILLINOIS ex rel. )
MELVIN CONWAY )
        Plaintiffs, )
     )
     )
v. )
     )
DONE RITE RECOVERY SERVICES INC., )
AND CREDIT ACCEPTANCE CORPORATION )
     )
        Defendants. )

1:14-cv-05182
Judge Elaine E. Bucklo
Magistrate Judge Sheila M. Finnegan

**JURY TRIAL DEMANDED**

---

Plaintiffs bring this action to secure redress from unlawful acts and abusive, unfair and misleading collection practices engaged in by defendants. Plaintiff alleges violation of the Fair Debt Collection Practices Act ("FDCPA" herein) 15 U.S.C. § 1692 et sq.; the Telephone Consumer Protection Act (" TCPA" herin) 47 U.S.C. § 227 *et seq.* ; Conversion; and, state law.

## INTRODUCTION

The term "consumer" as used in this Complaint means any natural person obligated or allegedly obligated to pay any debt primarily for his use or that of a member of his household. Section 803(3) of the FDCPA, 15 U.S.C. § 1692a(3).

The term "debt" as used in this Complaint means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5).

The term "debt collector" as used in this Complaint means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

The term "collection agency" as used in this complaint means any one covered by The Illinois Collection Agency Act. The Act requires licensing and registration of any person engaged in the exercise of any right to collect from consumers, including, but not limited to one who: (a) Engages in the business of collection for others of any account, bill or other indebtedness and or (d) Buys accounts, bills or other indebtedness and engages in collecting the same. 225 ILCS 425 et. seq.(225 Ill. Comp. Stat. Ann. § 425, West) (through P.A. 95-702 of the 2007 Reg. Sess).

The term "goods" as used in this complaint means goods as defined in the Retail Installment Contract Act which includes goods used or purchased primarily for personal, family, or household purposes; and, does not include a motor vehicle as defined in the Illinois Vehicle Code. 815 ILCS 405 et. seq. (Ill. Rev. Stat. 1992, Ch. 121 1/2, par. 137.4) (Source: P.A. 77-1166.)

The term "retail installment contract" "installment contract" or "contract" means an instrument or instruments, other than a retail charge agreement or an instrument reflecting a sale made pursuant thereto, entered into in this State and prescribing the terms of a retail installment transaction. 815 ILCS 405/2.6 (Ill. Rev. Stat. 1992, Ch.121 1/2, par.137.4} (Source: Laws 1967, p. 2149.)

The term "automatic telephone dialing system" means equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), 15 U.S.C. and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. Venue is proper in this district because the acts and transactions occurred in this district, Plaintiff maintains domicile in this district, and Defendants transact business in this district.

## PARTIES

3. Plaintiff Melvin Conway (hereinafter "Mr. Conway" and or "Plaintiff"), is a natural person domiciled in the County of Cook, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a (3).

4. Defendant Done Rite Recovery Services Inc. ( hereinafter "Defendant Done Rite"), is a corporation that engages in the trade of repossessing (collecting) property from Illinois consumers who owe or are asserted to allegedly owe a debt to another.

5. Defendant Done Rite is operating as a "debt collector," as defined by § 1692a (6) of the FDCPA; a "collection agency" as defined by the Illinois Collection Agency Act and, is located at an address of 3056 E 170th St, Lansing, IL 60438.

6. Defendant Credit Acceptance Corporation (hereinafter "Defendant CAC"), is a corporation and alleged assignee/buyer of a debt arising from an alleged automobile transaction, and is engaged in the attempt to collect a debt.

3

7.     Defendant CAC is a "debt collector," as defined by § 1692a (6) of the FDCPA; "collection agency" as defined by the Illinois Collection Agency Act; operates from an address of 25505 West 12 Mile Road Suite 3000, Southfield, MI 48034; and, does business in this State.

## FACTUAL SUMMARY

8.     This action concerns the misconduct of the Defendants in attempting and or continuing an attempt to collect a debt.   On or around July 6, 2012, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

9.     The obligation was purportedly incurred to purchase an automobile, 2002 4 Dr. Nissan Altima.

10.     Sometime thereafter, the alleged debt was assigned, consigned, purchased or otherwise transferred to Defendant CAC for collection.

11.     Defendant CAC misrepresented to the Plaintiff the debt was a consumer loan and he was obligated to repay monies loaned to him.  Plaintiff relied on said deceptive misrepresentations and was misled for an amount of time.

12.     Defendant CAC, in its communications with Plaintiff, failed to disclose it was a debt collector attempting to collect a debt.  One such communication is attached as <u>Exhibit A</u>.

13.     On or around April 10, 2014, Defendant CAC repossessed the Plaintiffs auto mobile for failure to make payments.  Defendant CAC falsely misrepresented to Plaintiff it held an enforceable security interest in Plaintiffs automobile, when this was not true.

14.     The Plaintiff redeemed the automobile with a cash payment in an amount proposed by Defendant CAC, as he was deceived by Defendant CAC's misrepresentations of the character, nature and status of the debt alleged.

15.     Plaintiff also tendered an amount sufficient to satisfy any alleged debt in reliance on misrepresentations of Defendant CAC, along with costs.

16.     Within 30 days of receipt of the initial communication from Defendant CAC regarding the collection of a repossessed automobile, Plaintiff disputed the debt in writing. The dispute also contained an express revocation of any prior consent given to Defendant CAC to call him on his cell or any other phone, using equipment capable of automatic dialing and or by manually dialing his number.

17.     Plaintiff received confirmation and return mail receipt of the written dispute on May 5, 2014 via certified mail number 70131710000078014220 . Exhibit B.

18.     Defendant CAC failed to respond to the written dispute and failed to cease collecting.

19.     Defendant CAC mailed a document titled "Contract Reinstatement Letter" to Plaintiff dated May 6, 2014 containing unfair and deceptive misrepresentations.  A copy of the letter is attached to this Complaint as Exhibit C.

20.     The letter further asserts Defendant CAC's right to attempt to collect payment(s) and an entitlement to take actions authorized by law, including repossession and sale of Plaintiffs vehicle at auction in continuation of the debt collection attempt, when no such rights exist.

21.     The letter alleges that payments granted to Defendant CAC must continue under the retail installment contract, on or before the regularly scheduled date, or Plaintiffs car may be repossessed again in order to continue said debt attempt.

22.     The letter also contains the mini Miranda" This notice was sent to you by a debt collector, in the attempt to collect a debt.  Any information received will be used for that purpose".

23.    The letter failed to include any copy of any judgment, verification, or proof of a legal obligation of Plaintiff to pay the alleged debt of the debt collector. Further, the communication deceptively misrepresents Defendant CAC's right to collect Plaintiffs car in connection with said debt collection attempt.

24.    CAC continued to call Plaintiff's cell phone, and upon information and belief, it continued to call the cell phone using equipment capable of dialing automatically and or capable of leaving pre-recorded messages.

25     The return receipt signed by an employee of Defendant CAC acknowledges receipt of Plaintiffs express written dispute and revocation of any prior consent to call him on his cell phone, using an automatic telephone dialing system. (See Exhibit B)

26.    Upon information and belief, Defendant CAC directed calls to continue to plaintiffs' cellular telephone using such equipment, even though defendant CAC knew, or should have known, Plaintiff did not and revoked consent to any such contact in writing.

27.    The TCPA prohibits the use of any "automatic telephone dialing systems" to call cell phones without express consent of the owner. "Automatic telephone dialing system" means any equipment that has the "*capacity* to dial numbers without human intervention." *Griffith v. Consumer Portfolio Serv., Inc.*, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011) (emphasis original).

28.    On at least one such occasion after May 5, 2014, Plaintiff answered a phone call from Defendant CAC and there was a pause before the person on the line began talking.

29.    Upon information and belief, on or around June 12, 2014, Defendant CAC subsequently assigned, transferred, or otherwise engaged the services of Defendant Done Rite in a continuation of the attempt to collect Plaintiff's automobile in connection with the debt

collection attempt. On or around June 12, 2014 Defendant Done Rite collected Plaintiffs automobile, which was parked inside a neighbor's fenced and enclosed yard.

30.     On or around June 14, Plaintiff called Defendant CAC. The representative and her supervisor informed Plaintiff they had in fact taken his car for missed payments and were entitled to take such action to collect a debt owed to them. They also referenced a contract signed by Plaintiff entitling them to payments and to possess his car.

31.     On June 16, 2014 Plaintiff sent a notice of intent to sue Defendant CAC for its abusive collection misbehavior via fax and certified mail. Confirmation of receipt via fax and certified mail # 70131710000078014268 is attached as Exhibit D.

32.     On or around June 17, 2014, Plaintiff received two mailings from Defendant CAC. One mailing contained a request for payment with coupon attached. The other contained a Repossession Notice. Neither contained any provisions relating the rights of a consumer to dispute the debt, both were sent in connection with an attempt to continue collection of a debt, and neither contained a mini Miranda. Both letters are attached as Exhibit E and Exhibit F.

33.     On or around June 19, 2014 Plaintiff received a letter from Defendant Done Rite. Exhibit G in connection with the continuing attempt to collect. The following morning Plaintiff called Defendant Done Rite, verbally disputed the debt and demanded the return of his personal property/car.

34.     The woman on the phone, upon information and belief was an employee of Done Rite. She told Plaintiff she had not received any instructions from Defendant CAC to release his car and no personal property had been retrieved. She also told Plaintiff that she would not release his car and if he wanted the car back, he had to contact Defendant CAC to authorize such release.

35.     On or around June 20, 2014, Plaintiff received a certified mail from Defendant CAC. The mailing contained a copy of an alleged Retail Installment Contract naming Plaintiff as Buyer and Ideal Motors, Inc. as the Creditor-Seller. Exhibit H.   The language in the document sent by Defendant CAC was confusing and deceptively crafted to create a belief in a consumer that Defendant CAC's actions were justified in taking his car and money.  Defendant CAC intended that the Plaintiff would rely on the document as evidence supporting its collection actions.

36.     Plaintiff has seen no proof that the document sent by Defendant CAC is genuine. However, what is made clear by the document is that Defendant CAC is not an original creditor of Plaintiff and did not have a valid security interest in Plaintiffs property.  On the face of the contract security is expressly described as follows:

"**Security**: You are giving a security interest in the *"goods"* or *"Vehicle"* being purchased". [on credit] (emphasis added)

Further, the section of the contract under OTHER IMPORTANT AGREEMENTS describes security as follows:

"You give Us a security interest in:1) The Vehicle and all parts or goods installed in it; 2) All money or goods received (proceeds) for the Vehicle; 3) All insurance, maintenance, service or other contracts We finance for you (this includes any refunds or premiums). This secures payment of all you owe on this Contract and in any transfer, renewal, extension or assignment of this Contract.  It also secures Your other agreements in this Contract.  You agree to have ....becomes unreadable...our security interest (lien) in the Vehicle''.

37.     Ideal Motors, Inc. is no longer in business.  Defendant CAC is not a party to the alleged contract it sent to Plaintiff.  Plaintiff clearly has and maintains an interest in the contract (Vehicle) it deposited with Ideal Motors, Inc. for safekeeping.  Indeed, the instrument confirms,

Defendant CAC is an alleged assignee and or debt buyer attempting to collect a debt. Plaintiff never intended to transfer his interest (asset/credit) deposited with Ideal Motors, Inc.

38.     The Retail Installment Contract Act in Illinois contains a provision which expressly provides "goods" does not include a motor vehicle as defined in The Illinois Vehicle Code, in other words, Plaintiff's 2002, 4 Dr., Nissan Altima.

39.     A quick definition search on the internet corroborates "Vehicle" is synonymous to "Instrument". "Or" is a conjunction used as a function word to indicate an alternative. "Instrument" as a term used in the Illinois Retail Installment Contract act means a retail installment sales "contract" (the vehicle) and *does not* include "goods" (a motor vehicle) as defined in the Illinois vehicle code.

40.     The FTC's website at https://www.consumer.ftc.gov/articles/0056-understanding-vehicle-financing details the true nature of such arrangements "called" assignments as follows:

Dealership Financing

In dealership financing — *another common type of vehicle financing* — you get financing through the dealership. You and a dealer enter into a contract where you buy a vehicle and agree to pay, over a period of time, the amount financed plus a finance charge. The dealer *may retain the contract, but typically "sells it" to a bank, finance company or credit union — "called an assignee" — that services the account and collects your payments.* (emphasis added)

41.     Further, Defendant CAC in an article on its company news website located on the internet at: http://www.creditacceptance.com/companynews.aspx expressly states:

**Credit Acceptance Announces: Certain Operating Results**

Dealers assign retail installment contracts (referred to as "Consumer Loans") to Credit Acceptance. At the time a Consumer Loan is submitted to us for assignment, we forecast future expected cash flows from the Consumer Loan. Based on the amount and timing of these forecasts and expected expense levels, an advance or one-time purchase payment is made to the related dealer at a price designed to achieve an acceptable return on capital.(emphasis original)

The article goes on to state:

We use a statistical model to estimate the expected collection rate for each Consumer Loan at the time of assignment. We continue to evaluate the expected collection rate of each Consumer Loan subsequent to assignment.

42.     Defendant CAC has admitted and evidence supports it purchased (was *assigned*) an alleged contract for servicing and collection of payments.  Therefore, it admits it could not have been a party to the original contract. Further, it intentionally interfered with the original parties to the contract in order to collect a debt.

43.     The Retail Installment Contract Act in Illinois expressly does not include a motor vehicle.  Consequently, Defendant CAC willfully unfairly misled and deceived Plaintiff by claiming it had a right to payment on a consumer loan, which is deceptive and misleading as consumers are likely to interpret this to mean a repayment of monies loaned to buy a car.  If a consumer fails to make said consumer loan payments, Defendant CAC engages in unfair, abusive and oppressive trade acts and tactics which include taking a consumers car and continuing to collect  an unsecured debt, while acting as though this is not the case.

44.     Plaintiff was deceived and damaged by misrepresentations of Defendant CAC. The contract provided to Plaintiff by defendant is prima facia evidence of a credit transaction. Yet, in reliance on the deceptive practices and acts of Defendant CAC; an additional tender was made to satisfy the alleged debt, not rejected, and not returned; cash payments were tendered by Plaintiff; and his car was taken in connection with the debt collection attempt.

45.     As a result of Defendant CAC's and Defendant Done Rite's bad behavior, Plaintiff was deprived of credit, property and is entitled to damages. Defendants have uniformly

10

engaged in a scheme of illegal and deceptive business practices that violate federal and state law in attempting to collect a debt from Plaintiff using deceptive misinformation and documentation.

46.     Defendants debt collection misconduct is oppressive and performed with reckless indifference towards the Rights of the Plaintiff.

47.     Upon information and belief, based upon industry practices this unfair debt collection scheme is perpetrated upon Illinois consumers by Defendant CAC and Defendant Done Rite regularly and implicates numerous consumer protection concerns.  Group Exhibit I.

48.     Plaintiff researched the Illinois Department of Professional and Financial Regulations website and discovered neither Defendant CAC nor Defendant Done Rite have obtained a license or registered in Illinois to engage in the trade or practice of collecting debts from Illinois consumers. See attached Exhibits J and K.

49.     Defendant's conduct tolled considerable injury and damage upon Plaintiff and stress upon his household. Plaintiff is dealing with sleeplessness, alienation of affection, depression, embarrassment, extreme emotional distress, and negative impacts on both work and personal relationships.

50.     Further, Defendant's Conduct improperly deprived Plaintiff of the use and enjoyment of his property without his permission.  Such conduct not only caused Plaintiff irreparable harm, but may be criminal as well. Plaintiff is forced to spend time and money dealing with Defendants misbehavior while struggling to provide for his family without use of his primary means of moving.

**Respondeat Superior Liability**

51.     The acts and omissions of Defendants, and/or the other debt collectors employed as agents by Defendants who communicated with Plaintiff- further described herein- were

committed within the time and space limits of their agency relationship with their principals, Defendants.

52.     The acts and omissions by Defendants and/or these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendants in collecting consumer debts.

53.     By committing these acts and omissions against Plaintiff, Defendants and these other debt collectors were motivated to benefit their principal, Defendants.

54.     Defendants are therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its collection employees, including but not limited to violations of the FDCPA and Illinois law, in their attempts to collect this debt from Plaintiff.

**TRIAL BY JURY**

55.     Plaintiff is entitled to and hereby respectfully demands a trial by jury. U.S. Const. amend. 7. Fed.R.Civ.P. 38.

**CAUSES OF ACTION**

**COUNT I.**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**BY DEFENDANT DONE RITE**
**15 U.S.C. § 1692 et seq.**

56.     Plaintiff incorporates by reference paragraphs 1-55 of this Complaint as though fully stated herein.

57.     The conduct of Defendant Done Rite constitutes numerous violations of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d [§806]; 1692e [§807] ;1692e (2)(A);

1692e(B);1692e(4); 1692e(5);1692e(10); 1692e(11);1692e(12) 1692f [§808]; 1692f(1);

1692f(6)(A);1692f (6) (B); and 1692j [§ 812]amongst others.

58.     The foregoing acts and omissions of Defendant Done Rite and its agents

constitute numerous and multiple violations of the FDCPA including, but not limited to, each

and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with

respect to Plaintiff.

**WHEREFORE,** Plaintiff request that the Court enter judgment for damages in favor of

Plaintiff and against Defendant Done Rite for: Actual damages pursuant to 15 U.S.C. §

1692k (a) (1): in the amount to replace a personal automobile for Plaintiff; infliction

of emotional distress and mental suffering caused by defendants misbehavior; loss of time,

monies and opportunities dealing with conduct of defendant; Statutory damages in an amount

of $1000.00 pursuant to 15 U.S.C. § 1692k (a)(2)(A), and reasonable attorney's fees

and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant herein. Plaintiff further requests

that the court allow him an opportunity to cure deficiencies, if any, identified by the Court.

### COUNT II.
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### BY DEFENDANT CAC
### 15 U.S.C. § 1692 et seq.

59.     Plaintiff incorporates by reference paragraphs 1-55 of this Complaint as though

fully stated herein.

60.     The conduct of Defendant CAC constitutes numerous violations of the FDCPA,

Including but not limited to 15 U.S.C. §§ 1692d [§806];1692d(5) 1692e [§807] ;1692e

(2)(A);1692e(4); 1692e(5);1692e(6)(A);1692e(8);1692e(9);1692e(10); 1692e(11);1692e(12)

1692f [§808]; 1692f(1); 1692f(6)(A);1692f (6) (B); 1692f(C); 1692g [§809]and 1692j [§ 812]

amongst others.

WHEREFORE, Plaintiff request that the Court enter judgment for damages in favor of Plaintiff and against Defendant CAC for: Actual damages pursuant to 15 U.S.C. § 1692k (a)(1) in the amount of any payments, credits and or tender offered to satisfy any alleged debt or otherwise claimed by Defendants; costs to replace a personal automobile of Plaintiff; emotional distress; loss of family enjoyment time; monies and lost opportunities as a result of misconduct of defendant; Statutory in an amount of $1000.00 pursuant to 15 U.S.C. §1692k (a)(2)(A), and reasonable attorney's fees and costs pursuant to 15 U.S.C. §1692k(a)(3), from Defendant herein. Plaintiff further requests that the court allow him an opportunity to cure deficiencies, if any, identified by the Court.

## COUNT III.
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## BY DEFENDANT CAC
## 47 U.S.C. § 227 et seq

61.     Plaintiffs incorporate paragraphs 1-55 of this complaint. This Count is against Defendant CAC.

62.     It is a violation of the TCPA, 47 U.S.C. §227(b) to call a person's cellular telephone using an automatic telephone dialing system; prerecorded or artificial voice message; and or using equipment capable of automatically dialing a consumers cell phone, without express consent.

63.     Calls that are the subject of this lawsuit were in attempt to collect a debt on behalf of the Defendant.

64.     Plaintiff expressly revoked and terminated any previous consent for Defendant to call Plaintiff using such equipment in writing and Defendant received and acknowledged said written termination.

65.    Calls continued in behalf of Defendant to Plaintiffs cell phone after May 5, 2014 using equipment capable of automatic telephone dialing.

66.    Upon information and belief, more than 8 such phone calls were made to number 708-XXX-4958 after May 5, 2014. It is believed a number of calls from defendant may have been dialed anonymously.

67.    Plaintiff is entitled to have his rights, status and legal relations under the TCPA relating to defendants' calling of their cell phones using an automatic telephone dialing system and using an artificial or prerecorded voice.

68.    The defendants' calls were negligent, or alternatively, they were willful.


WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant CAC that provides the following relief: Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful; A permanent injunction Prohibiting Defendant from violating the TCPA in the future through calling Plaintiffs cell phone using an automatic telephone dialing system and/or a prerecorded voice message; declaration that defendant violated the TCPA as to Plaintiff; and, any other relief the Court finds just and proper. Plaintiff further requests that the court allow him an opportunity to cure deficiencies, if any, identified by the Court.

### COUNT IV.
### VIOLATIONS OF THE ILLINOIS COLLECTION AGENCY ACT (ICAA) BY DEFENDANT CAC AND DEFENDANT DONE RITE PRIVATE ATTORNEY GENERAL CLAIM

69.    Plaintiff People of the State of Illinois ex rel Melvin Conway incorporate paragraphs 1-55 of this complaint.

70.     Plaintiff alleges, because neither Defendant was licensed as a collection agency in Illinois, defendants had no right to engage in the right to collect from Plaintiff or exercise any self help options such as repossession.

71.     The ICAA creates a licensing regime. 225 ILCS 425/4 provides:

> No collection agency shall operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act except that no collection agency shall be required to be licensed or maintain an established business address in this State if the agency's activities in this State are limited to collecting debts from debtors located in this State by means of interstate communication, including telephone, mail, or facsimile transmission from the agency's location in another state provided they are licensed in that state and these same privileges are permitted in that licensed state to agencies licensed in Illinois.

72.     The licensing requirements of the ICAA were imposed to protect the public. The public policy represented by the ICAA is stated in 225 ILCS 425/1a:

> The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes.

It is further declared to be the public policy of this State to protect consumers against debt collection abuse.

73.     225 ILCS 425/14 and 14b make it a crime to engage in the business of a collection agency without a license.

74.     Plaintiff(s) is entitled to relief against Defendants under 225 ILCS 425/14a.


WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against defendants for; Injunctive relief; Attorney's fees, litigation expenses and costs of suit;

and for such other or further relief as the Court deems proper. Plaintiff further requests that the court allow him an opportunity to cure deficiencies, if any, identified by the Court.

<div align="center">

**COUNT V.**
**CONVERSION**
**BY DEFENDANT CAC AND DEFENDANT DONE RITE**

</div>

75.      Plaintiff incorporates paragraphs 1-55 of this complaint.

76.      Defendants worked in collusion and engaged in misconduct which deprived Plaintiff of his Right to use and enjoy property, including but not limited to deprivation due to: interference with a contractual relationship; misappropriation of Tender (assets) credit and or cash; and, unauthorized taking of his personal automobile. Plaintiff brings this action for damages for the tort of conversion. Defendants refused to return Plaintiffs property and instead willfully and intentionally asserted their bad behavior as justified.

77.      Defendants actions breached the peace and disturbed neighborhood tranquility by trespassing on a neighbor's property to remove Plaintiffs parked automobile from inside a fenced yard belonging to a neighbor and without first obtaining permission to enter the yard.

78.      Defendants engaged in unfair acts which deprived and interfered with Plaintiffs use of his property. Such practices were indeed unlawful and certainly criminal as Defendants held no valid security interest in the automobile at the time of taking.

79.      Plaintiff disputed the claims of Defendant CAC in writing and verbally disputed the claims of Defendant Done Rite. Neither ceased to collect the debt and neither verified the alleged debt.

80.      Plaintiff tendered payment of the alleged debt in behalf of Defendant CAC prior to being deprived of his automobile and asked that proof of defect of said tender be provided, if any. Defendant CAC failed to provide proof of defect, failed account for the tender and failed to

<div align="center">

17

</div>

apply it (book entry credit) in behalf of the Plaintiff in satisfaction of the alleged debt and instead continued collecting.

81.     Defendant CAC interfered with, and thereby elected to deprive Plaintiff of his Rights, title and interests under contract, in a manner that was willful and intention and converted his property including, but not limited to: the Vehicle (contract/instrument) deposited with Ideal Motors, Inc. for safekeeping; total sales price of $14,866.00 (book entry credit payment in advance); payments misrepresented as consumer loan; and, more.

82.     The behavioral misconduct of Defendant CAC deprived Plaintiff of his Rights to the use and enjoyment of his, credit, cash, instrument and automobile, without his consent. Defendant CAC's misconduct indeed caused Plaintiff extreme distress, loss and damage.

83.     The behavioral misconduct of Defendant Done Rite deprived Plaintiff of his automobile, even after he verbally disputed and challenged its attempt to collect a debt. Consequently, Plaintiff was embarrassed, and damaged.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant CAC for the award of damages for conversion in the fair market value of: the "goods" or "vehicle" identified as security in the contract; total sales price of $14,866.00 ( credit) ; extended warranty coverage or a service contract and related expenses; a partial refund of the finance charge; tender accepted and not returned in an amount sufficient to satisfy the alleged debt claimed by defendants; the personal automobile of Plaintiff and legal interest to the time of the verdict; punitive damages; costs of suit; and such other or further relief as the Court deems proper.

Plaintiff also request the Court enter judgment in favor of Plaintiff and against Defendant Done Right for the award of damages for conversion in the fair market value of Plaintiffs

automobile; punitive damages; legal interest to the time of the verdict; costs of suit; and such

other or further relief as the Court deems proper. Plaintiff further requests that the court allow

him an opportunity to cure deficiencies, if any, identified by the Court.

## COUNT VI.
## ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT
## BY DEFENDANT CAC AND DEFENDANT DONE RIGHT

86.     Plaintiff incorporates paragraphs 1-55 of this complaint.

87.     Defendant CAC engaged in unfair and deceptive acts and practices, in violation

of 815 ILCS 505/2, by (a) demanding and collecting money and property to which it had no

legal right; (b) misrepresenting an interest Plaintiff's contract as a creditor collecting loan

repayments when this was not true; (c) allegedly purchasing service rights and enforcing a

secured interest in Plaintiffs car when no such enforceable security interest exist; (d) attempting

to get a benefit from Plaintiffs contract without his knowledge or consent, (e) intentionally

engaging the services of other debt collectors to assist in the attempt to collect a debt  though no

valid enforceable security interest exist; and, (f) doing so as part of a pattern and practice of

improper collection/servicing practices.

88.     Defendant CAC and Defendant Done Rite violated the public policy of Illinois,

by engaging in the business of an unlicensed collection agency.

89.     Defendant Done Rite engaged in the collection of property from consumers

without permission, without exercising a reasonable duty of care and without any enforceable

valid security interest.

90.     Defendant CAC and Defendant Done Rite's use of unfair methods of competition

and abusive debt collection conduct inflicted substantial injury on consumers, by taking their

money, and or property, and threatening them with loss of money and or property.

91.     Defendant CAC was engaged in trade or commerce collecting and or servicing assigned Retail Installment Contracts "referred to" as consumer loans.

92.     Defendant Done Rite was engaged in trade or commerce collecting property from consumers.

93.     Defendant CAC and Defendant Done Rite engaged in the conduct complained of for the purpose of affected plaintiff.


WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Defendant Done Rite and Defendant CAC for : (1) Actual damages; (2) Punitive damages; (3) Attorney's fees, litigation expenses and costs of suit; and (4) Such other or further relief as the Court deems proper.  Plaintiff further requests that the court allow him an opportunity to cure deficiencies, if any, identified by the Court.

Dated: July 3, 2014                                     Respectfully submitted,

                                                        By: _____
                                                             Melvin Conway

Melvin Conway
1508 E. Marquette Rd.
Cook, Illinois 60637
708-548-4559
melvinconway@ymail.com

## VERIFICATION

The undersigned declares under penalty of perjury, as provided for by 28 U.S.C. §1746, that the facts stated in the foregoing complaint are true to the best of his knowledge and belief.

By: _____

Melvin Conway

## IN THE DISTRICT COURT OF THE UNITED STATES
## NORTHERN ILLINOIS DISTRICT
## EASTERN DIVISION

MELVIN CONWAY and PEOPLE OF      )
THE STATE OF ILLINOIS ex rel.       )
MELVIN CONWAY                )
            Plaintiffs,        )
                           )
v.                            )
                           )
DONE RITE RECOVERY SERVICES INC.,  )
AND CREDIT ACCEPTANCE CORPORATION  )
                           )     **JURY TRIAL DEMANDED**
         Defendants.        )

- I Melvin Conway am of the age of maturity to make this affidavit and the testimonial facts herein

- I Melvin Conway am mentally competent to make this official Affidavit of Testimonial Facts for the Court Record

- I Melvin Conway have personal knowledge of the facts in this testimony and affidavit

- This Affidavit is made under penalties of perjury and must be responded to by a counter affidavit by any and all parties within 30 days or it will stand as undisputed fact as a matter of law

" I Melvin Conway declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

[Made Pursuant to Title 28 USCA Section 1746]

## SUMMARY OF EVENTS WITH AFFIDAVIT INCORPORATED

1

1. On or around April 27, 2014, I Melvin Conway mailed a written dispute in response to an initial communication regarding a repossession sent by Credit Acceptance Corporation dated April 10, 2014. Delivery and confirmation of the dispute was returned to me via USPS mail and a copy of the certified mail receipts are attached to the complaint as Exhibit B.

2. On occasions after May 5, 2014 communications were received by me from Credit Acceptance Corporation that failed to contain the mini Miranda notice "This is an attempt to collect a debt. Any information received will be used for that purpose". I Melvin Conway have attached a copy of one such communication I received to the complaint as Exhibit A.

3. I Melvin Conway received a document dated May 6, 2014 from Credit Acceptance Corporation which admits they are a debt collector and have attached a copy of the document received to the complaint as Exhibit C.

4. Credit Acceptance Corporation failed to cease collecting the debt after receiving a written dispute.

5. Credit Acceptance Corporation failed to verify the debt after receiving a written dispute.

6. Credit Acceptance Corporation failed to respond to a written request for evidence of defect in tender offered. Credit Acceptance Corporation failed to state the tender was insufficient to satisfy its alleged debt claim and instead continued to attempt to collect a debt.

7. Credit Acceptance Corporation misrepresented the nature, character and status of an alleged debt. Credit Acceptance Corporation threatened to take actions it legally

2

could not take in reliance on the fact a consumer would be misled and or deceived as to the source, authorization or approval to collect using such practices.

8. Misrepresenting a consumers legal rights in order to coerce payment in connection with a debt collection attempt is a deceptive means o collect or attempt to collect a debt.

9. On or around June 14, 2014, I Melvin Conway called Credit Acceptance Corporation. The agents of Credit Acceptance Corporation ask consumers to verify a phone number in order to proceed with an inquiry. They also offer the option of providing additional numbers. I Melvin Conway verified my phone number without waiving the prior express written revocation to call the number. They acknowledged receipt of the written revocation on or around May 5, 2014.

10. The phone verification process is an unfair trade practice used by the agents of Credit Acceptance Corporation to deceptively obtain information from a consumer and or to attempt to collect a debt.

11. During the phone call representatives verified they had initiated and engaged in actions that led to the car being taken without permission. I Melvin Conway verbally disputed the debt and demanded the return of my property. The call was disconnected and collection action continued.

12. On June 16, 2014 I Melvin Conway sent Credit Acceptance a notice of intent to sue after they refused to return my property. I Melvin Conway sent the notice by fax and by certified mail. A copy of the delivery confirmation via certified mail and return receipt were received by me via fax confirmation and from the USPS mail. I Melvin Conway attached copies of the confirmations to the complaint as Exhibit D.

13. In the Notice of Intent to sue, I Melvin Conway expressly stated that filing a lawsuit was not my preferred means of redress for their misconduct. I Melvin Conway offered an email address for immediate contact in order to resolve this matter without having to resort to litigation in court.

14. On or around June 17, 2014, two separate envelopes were received by me from Credit Acceptance Corporation. I Melvin Conway attached copies of the documents inside the mailings I Melvin Conway received to this complaint as Exhibits E and F.

15. Both communications continue to attempt to collect a debt by using unfair and unconscionable means.

16. On or around June 19, 2014, I Melvin Conway received a mailing from Done Rite Recovery Services, Inc. I Melvin Conway attached a copy of the contents of the mailing to the complaint as Exhibit G.

17. On or around June 20, 2014, I Melvin Conway called Done Rite on the number listed in the communication and attempted to make an appointment to get my automobile, my personal property taken without my permission. They refused to return my property even after dispute.

18. On or around June 20, 2014, I Melvin Conway received a certified mail from Credit Acceptance Corporation. I Melvin Conway attached a copy of the contents of that mailing I Melvin Conway received to the complaint as Exhibit H.

19. The mailing contained a copy of an alleged contract. The contract confirms Credit Acceptance is not an original creditor nor is a named party to the contract. The contract names Melvin Conway as a Party and Ideal Motors as the other party.

20. The foregoing acts on the part of Credit Acceptance Corporation and or Done Rite Recovery Services, Inc. were and continue to (a) contravene public policy; (b) oppressive; and (c) cause substantial injury to consumers, including, but not limited to Melvin Conway.

Respectfully submitted,

_Melvin Conway_

Melvin Conway

NOTARY ACKNOWLEDGEMENT

Subscribed and affirmed before me _Kamisha Youngblood_ , a Notary public, this 8th day of July 2014 that the above-named person did appear before me and proved on the basis of satisfactory evidence to be the man executing this document.

Notary Public Signature _____
Civil Law Notary – Notary Public for _Cook County_
My commission expires:_____

OFFICIAL SEAL
KAMISHA YOUNGBLOOD
Notary Public - State of Illinois
My Commission Expires Nov 26, 2016

5

# EXHIBIT A



**Credit Acceptance**
*We change lives!*

**Corporate Headquarters**
Silver Triangle Building
25505 West Twelve Mile Rd
Southfield, Michigan 48034-8339
**(800) 634-1506**

**DATE:** May 24, 2013

**TO:** Melvin L Conway
1508 E Marquette Rd
Chicago IL 60637-4415

**ACCOUNT:** 48634576

**PAST DUE:** $930.7

**VEHICLE:** 2002 Nissan Altima

Your account is seriously delinquent. It is imperative that you pay the past due balance or call us today.

We may still be able to structure a payment plan that will reduce or eliminate your past due balance, but you must call us to make proper arrangements. If we do not hear from you soon, we will be forced to pursue a legal remedy for your default.

You can eliminate your past due balance today by sending your payment through Western Union's Speedpay, Western Union Payments or MoneyGram Express Payment. For more details, see the payment information below, or call the toll-free number above M-F 8:00 a.m. - 11:00 p.m. EST and Sat 8:00 a.m. - 8:00 p.m. EST.

---

**PAYMENT INFORMATION**

1. You may submit a payment online through Western Union Speedpay. Payments can be made through Speedpay 24 hours a day, 7 days a week. To make a payment, visit www.creditacceptance.com and click *Make Payment Online*.

2. You may send your payment by Western Union Payments. To locate your local Western Union Payments Agent, call 1-800-325-6000. To send your payment by Western Union Payments you will need to know your account number and the following codes: CODE CITY: ACCEPTANCE and CODE STATE: MI

3. You may send your payment by MoneyGram Express Payment at any agent location. You will need to know your account number and the following code: Receive Code: 4093. To locate an agent near you, call 800-MONEYGRAM or visit www.moneygram.com.

4. You may send your payment, along with the attached payment coupon, to our payment-processing center at Credit Acceptance Corporation, PO BOX 551888, DETROIT, MI 48255-1888. Checks and money orders should be made payable to Credit Acceptance Corporation and include a reference to your account number. DO NOT SEND CASH!

5. You may personally deliver your payment, or send it by overnight courier, to Credit Acceptance Corporation, 25505 West Twelve Mile Road, Southfield MI 48034. Do not send your payment by overnight courier to any other address. This will only delay delivery.

For a list of all payment options please visit our website at www.creditacceptance.com.

1306-PDR4-AA-FC-M

CONCRAC011306

---

## PAYMENT COUPON


PO Box 513
Southfield MI 48037-0513
ADDRESS SERVICE REQUESTED

☐ Check here if you have an Address/Phone Change.

Please include new address/phone below:

Street Address: _____

City, State, ZIP: _____

Phone: (_____) _____ - _____

| Date | Account # | Amount Due |
|------|-----------|------------|
| 5/24/2013 | 48634576 | $930.7 |

48634576-1306   59944383

Melvin L Conway
1508 E Marquette Rd
Chicago IL 60637-4415

**CREDIT ACCEPTANCE CORPORATION**
PO BOX 551888
DETROIT MI 48255-1888

048634576 000009307 990001306   8

# EXHIBIT B

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Credit Acceptance Corporation
ATTN: Consumer Disputes
25505 W. Twelve Mile Rd

SOUTHFIELD, Michigan
48034

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Rodorick O. Lynn_ ☐ Agent ☐ Addressee

B. Received by (Printed Name) _Rodenick D'Lynn_   C. Date of Delivery MAY 0 5 2014

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail ☐ Priority Mail Express™
   ☐ Registered ☐ Return Receipt for Merchandise
   ☐ Insured Mail ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
   (Transfer from service label)
   7013 1710 0000 7801 4220

PS Form 3811, July 2013    Domestic Return Receipt

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

SOUTHFIELD MI 48034

| | | |
|---|---|---|
| Postage | $   $0.49 | 0804 |
| Certified Fee | $3.30 | 09 |
| Return Receipt Fee (Endorsement Required) | $2.70 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $   $6.49 | 04/28/2014 |

Sent To
Credit Acceptance Corporation
Street, Apt. No.; or PO Box No. 25505 W. Twelve Mile Rd
City, State, ZIP+4 P.O. Box 5176
Southfield Michigan 48054

PS Form 3800, August 2006    See Reverse for Instructions

7013 1710 0000 7801 4220

# EXHIBIT C

Credit Acceptance Corporation

Silver Triangle Building • 25505 West Twelve Mile Road,
Suite 3000
Southfield, Michigan 48034-8339
(800) 716-7376



Credit
Acceptance
*We change lives!*

50565 000426  -001

TO: MELVIN L CONWAY
    1508 E MARQUETTE RD
    CHICAGO IL  60637-4415

DATE:     MAY 06 2014

ACCOUNT: 48634576

VEHICLE: 2002 NISSAN ALTIMA

VIN:      1N4AL11D02C114560

## Contract Reinstatement Letter

Dear MELVIN L CONWAY

Please accept this letter as confirmation that we have reached an understanding with you on the release of your vehicle and the reinstatement of the retail installment contract that you have with us.  On May 01, 2014 we released your vehicle to you in exchange for your payment of $  620.00.  However, after our receipt of this payment your account still had a past due balance.  Therefore, in order to bring your account current you agreed to make Monthly payment(s) as described below.  In return for that agreement, we agreed to reinstate your contract on the condition that you make Monthly payment(s) described below.

After payment of the above amount we released your vehicle on the condition that you make payments in accordance with the below schedule until the past due balance is eliminated and all fees and charges assessed against your account have been paid.  You have agreed to the following payment schedule:

Payment(s) of $  568.72 on a Monthly basis on or beginning May 20, 2014

If any payment is not received in accordance with the above schedule, we will be entitled to take all action authorized under applicable law, including repossession and sale of your vehicle at auction.  Any additional payment(s) received outside of the above schedule will be credited to your past due balance.  Although we have released your vehicle to you, reinstatement of your contract is subject to revocation until the above payments are made and your account no longer has a past due balance.  If you have questions regarding the above mentioned schedule, please call our Customer Service Department at 1-800-634-1506.

Our agreement to allow you to eliminate your past due balance by  making Monthly payment(s) should not be construed as a waiver of any of the rights and remedies granted to us in the retail installment contract you have with us or as may otherwise be available to us in accordance with applicable law.  It is important that you  get your payment(s) to us on or before the scheduled date(s).  **After you have eliminated the past due balance on your account, you must continue to make all payments under the retail installement contract on or before the regularly scheduled due date or your car may be repossessed again**

To assist you in making your Monthly payment(s) set forth above, we recommend that you either:

1.  Send your payment(s) by    **Western Union Quick Collect or Money Gram Express Payment.**
To locate your local Western Union Agent, call 1-800-325-6000.  To locate your local Money Gram Agent, call 1-800-926-9400.  To send your payment(s) by either method, you will need to know your account number (shown above) and the following information:

* **Western Union Quick Collect: CODE CITY: ACCEPTANCE and CODE STATE: MI**
* **Money Gram Express Payment: COMPANY: CREDIT ACCEPTANCE - CITY: SOUTHFIELD, MI and RECEIVE CODE: 4093**

2.  Send your payment(s) by Cashiers Check or Money Order to: PO Box 55000 Dept 188801, Detroit, MI 48255-1888.  Do not send your payment(s) by overnight courier.  This will only delay delivery.  DO NOT SEND CASH

**This notice was sent to you by a debt collector, in attempt to collect a debt.  Any information received will be used for that purpose.**

Sincerely,

*Credit Acceptance Corporation*

1794-REDEEM-CM-M

# EXHIBIT D

7013 1710 0000 7801 4268

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

| | |
|---|---|
| SOUTH FIELD MI 48034 | |
| Postage | $ $1.63 |
| Certified Fee | $3.30 |
| Return Receipt Fee (Endorsement Required) | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $7.61   06/16/2014 |

Sent To: *CREDIT ACCEPTANCE CORPORATION*
Street, Apt. No., or PO Box No. *25505 W. TWELVE MILE ROAD*
City, State, ZIP+4 *SOUTHFIELD Michigan 48034*

---

## SENDER: COMPLETE THIS SECTION

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Credit Acceptance
Corporation
25505 W. Twelve Mile Road
South Field, Michigan 48034
Attn: legal Dept.

## COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _____  □ Agent  □ Addressee

B. Received by (Printed Name)   C. Date of Delivery
JUN 2 3

D. Is delivery address different from item 1? □ Yes
If YES, enter delivery address below:  □ No

3. Service Type
□ Certified Mail®   □ Priority Mail Express™
□ Registered        □ Return Receipt for Merchandise
□ Insured Mail      □ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   □ Yes

2. Article Number
(Transfer from service label)

7013 1710 0000 7801 4268

PS Form 3811, July 2013       Domestic Return Receipt

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Melvin Conway
1508 E. Marquette Rd.
Chgo. IL 60637



✎ Compose

← ⤆ →    🗑 Delete    📁 Move ⌄    🛇 Spam ⌄    ▪▪▪ More ⌄    ☰ Collapse All ✕

Inbox (9999+)
Drafts (22)
Sent
Spam (2439)
Trash
⌄ Folders (16)
  Synced Mess... (16)
  untitled
> Recent
⊛ Sponsored

**Auto Insurance Discounts**
2014 - Best Way to Cut Your Auto
Insurance Bill!

## MyFax Notification - Fax Sent Successfully

**MyFax Free**
To Me

Dear Melvin Conway:

Your fax to Legal Department at +1 (866) 808-6559 has been successfully sent:
Your fax was delivered at 6/16/2014 5:11:34 PM, and contained 21 page(s).

Thank you for choosing MyFax.
The MyFax Team
http://www.myfax.com

🐾 **fax**®

Internet faxing.
For businesses on the move, like yours.    🐾 **fax**

Reply, Reply All **or** Forward | More

>

# EXHIBIT E



**Credit Acceptance**
*We change lives!*

Corporate Headquarters
Silver Triangle Building
25505 West Twelve Mile Rd
Southfield, Michigan 48034-8339
**(800) 634-1506**

**DATE:** June 12, 2014

**TO:** Melvin L Conway
1508 E Marquette Rd
Chicago IL 60637-4415

**ACCOUNT:** 48634576

**PAST DUE:** $2632.54

**VEHICLE:** 2002 Nissan Altima

Your account is seriously delinquent. It is imperative that you pay the past due balance or call us today.

We may still be able to structure a payment plan that will reduce or eliminate your past due balance, but you must call us to make proper arrangements. If we do not hear from you soon, we will be forced to pursue a legal remedy for your default.

You can eliminate your past due balance today by sending your payment through Western Union's Speedpay, Western Union Payments or MoneyGram Express Payment. For more details, see the payment information below, or call the toll-free number above M-F 8:00 a.m. - 11:00 p.m. EST and Sat 8:00 a.m. - 8:00 p.m. EST.

PAYMENT INFORMATION

1. You may submit a payment online through Western Union Speedpay. Payments can be made through Speedpay 24 hours a day, 7 days a week. To make a payment, visit www.creditacceptance.com and click *Make Payment Online.*

2. You may send your payment by Western Union Payments. To locate your local Western Union Payments Agent, call 1-800-325-6000. To send your payment by Western Union Payments you will need to know your account number and the following codes: CODE CITY: ACCEPTANCE and CODE STATE: MI

3. You may send your payment by MoneyGram Express Payment at any agent location. You will need to know your account number and the following code: Receive Code: 4093. To locate an agent near you, call 800-MONEYGRAM or visit www.moneygram.com.

4. You may send your payment, along with the attached payment coupon, to our payment-processing center at Credit Acceptance Corporation, PO BOX 551888, DETROIT, MI 48255-1888. Checks and money orders should be made payable to Credit Acceptance Corporation and include a reference to your account number. DO NOT SEND CASH!

5. You may personally deliver your payment, or send it by overnight courier, to Credit Acceptance Corporation, 25505 West Twelve Mile Road, Southfield MI 48034. Do not send your payment by overnight courier to any other address. This will only delay delivery.

For a list of all payment options please visit our website at www.creditacceptance.com.

1306-PDR4-AA-FC-M

## PAYMENT COUPON

CONCRAC011306

PO Box 513
Southfield MI 48037-0513
ADDRESS SERVICE REQUESTED

| Date | Account # | Amount Due |
|------|-----------|------------|
| 6/12/2014 | 48634576 | $2632.54 |

48634576-1306    332077416
Melvin L Conway
1508 E Marquette Rd
Chicago IL 60637-4415

☐ Check here if you have an Address/Phone Change.

Please include new address/phone below:

Street Address: _____

City, State, ZIP: _____

Phone: (_____) _____ - _____

**CREDIT ACCEPTANCE CORPORATION**
PO BOX 551888
DETROIT MI 48255-1888

048634576 000263254 990001306    7

# EXHIBIT F

CREDIT ACCEPTANCE CORPORATION
25505 WEST TWELVE MILE ROAD
P.O. BOX 5176
SOUTHFIELD, MICHIGAN 48034

DATE: June 13, 2014

Batch #: 114,695
Article #: 71791000164777996678
Date/Time: 6/13/2014 12:35:30PM
Code: 48634576
Code2: 1728

MELVIN L CONWAY
1508 E MARQUETTE RD
CHICAGO, IL 60637

Internal File #:
Internal Code:

VEHICLE: 2002 NISSAN ALTIMA
VIN:       1N4AL11D02C114560
ACCOUNT: 48634576
SUBJECT: Security Agreement Dated 07/06/2012

NOTICE OF REPOSSESSION.

Credit Acceptance Corporation repossessed the above-referenced vehicle on
06/12/2014 for failure to make payments.

NOTICE OF RIGHT OF REINSTATEMENT.

For 21 days after the mailing date of this notice, you may reinstate the
contract and recover the vehicle by tendering in a lump sum: (a) the total
of all unpaid amounts, including unpaid delinquency or deferral charges due
at the date of reinstatement, without acceleration; and (b) performance
necessary to cure any default other than nonpayment of the amounts due; and
(c) all reasonable costs and fees incurred by Credit Acceptance Corporation
in retaking, holding, and preparing the vehicle for disposition and in
arranging for the sale of the vehicle.  For more information about your
right of reinstatement, contact Credit Acceptance Corporation at 25505 West
Twelve Mile Road, Suite 3000, Southfield, Michigan, 48034, or call (800)
716-7376.

NOTICE OF RIGHT OF REDEMPTION.

You may also recover the vehicle by exercising your right of redemption. To
exercise your right of redemption, you must tender fulfillment of all
obligations secured by the vehicle and the reasonable expenses of retaking,
holding, preparing for disposition, processing, and disposing of the
vehicle, and, to the extent provided for by agreement and not prohibited by
law, reasonable attorney's fees and legal expenses incurred by Credit
Acceptance Corporation. You may redeem the vehicle at any time before Credit
Acceptance Corporation has disposed of the vehicle or contracted for its
disposition.  For more information about your right of redemption, contact
Credit Acceptance Corporation, at 25505 West Twelve Mile Road, Suite 3000,
Southfield, Michigan, 48034, or call (800) 716-7376.

ACCOUNT: 48634576

MELVIN L CONWAY
1508 E MARQUETTE RD
CHICAGO, IL  60637

NOTICE OF INTENT TO DISPOSE OF VEHICLE.

If you do not exercise your right of reinstatement or your right of redemption, Credit Acceptance Corporation intends to dispose of the vehicle after 21 days from the mailing date of this notice.


NOTICE OF INTENT TO TRANSFER TITLE.

Credit Acceptance Corporation intends to transfer the title to the vehicle out of your name. If you have a defense to our claim, you can stop the transfer of title by delivering the following completed affidavit to us no later than 21 days after this notice was mailed.

---

### AFFIDAVIT OF DEFENSE.

VEHICLE: 2002 NISSAN ALTIMA

LIENHOLDER: Credit Acceptance Corporation

OWNER:MELVIN L CONWAY

ACCOUNT: 48634576

I hereby declare that I am the owner of the above-referenced vehicle, and I have a bona fide defense to the application of Credit Acceptance Corporation for the transfer of title to the vehicle described above.
My defense is:

_____

_____

_____

I understand that I may be liable to Credit Acceptance Corporation for its fees, charges, and costs incurred in establishing the insufficiency or invalidity of my defense.

Signature:                                          Date

_____          _____

Notary Public:

# EXHIBIT G

# Notice of Seizure and Personal Property Inventory

**Done Rite Recovery Services Inc.**
3056 E 170th St
Lansing, IL 60438

06/16/2014
**Case #:** 2032754743
**Reference #:** 28823
**Acct #:** 48634576

**Debtor**
MELVIN L CONWAY
1508 E Marquette Rd
Chicago, IL 60637

**Lien Holder**

Credit Acceptance

**Vehicle**
2002 NISSAN ALTIMA
**VIN:** 1N4AL11D02C114560

**Prepared on:** 06/16/2014 at 12:11:46

The following items were recovered from the above vehicle on: 06/12/2014

I hereby certify, under penalty of perjury, that the above items were the only personal effects or personal property recovered from this vehicle.

I understand that falsification of an inventory report is grounds for suspension or revocation of a license.

Personal property can be picked up by APPOINTMENT ONLY by calling 708-418-4315.

A HANDLING FEE of $70.00 has been assessed in addition to a STORAGE CHARGE per day of

$ 0 on all personal property.

All personal property will be disposed of AFTER 45 DAYS in storage if left unclaimed. Personal license plates left unclaimed after 45 days will be destroyed.

In some state jurisdictions, repossession agencies are required to provide you, no later than 48 hours after the recovery of collateral, with an inventory or personal effects or personal property recovered during repossession unless the 48-hour period encompasses a Saturday or Sunday, or a posted holiday, then the inventory shall be provided no later than 96 hours after the recovery of the collateral.

Damage to a vehicle while the vehicle is in the possession of the repossession agency is the responsibility of the repossession agency.

A mechanical or tire failure is not the responsibility of the repossession agency unless the failure is due to the negligence of the repossession agency.

THIS VEHICLE WAS REPOSSESSED AT THE REQUEST OF THE Credit Acceptance BY Done Rite Recovery Services Inc. on 06/12/2014

Please contact the lienholder if you have any questions regarding why your vehicle was repossessed or about the process of redeeming your vehicle.

_____                    _____
**Signature of Person Taking Inventory**                                          **Date**

## NOTIFICATION TO DEBTOR

Date of Notice:          Jun 16, 2014

Date of Repossession:    Jun 12, 2014

| Identity of Debtor | |
|---|---|
| Name of Debtor:<br>Melvin Conway | |
| Street Address:<br>1508 E Marquette Rd | |
| City:<br>Chicago, IL 60637 | Phone Number: |

| Description of Collateral Repossessed |
|---|
| 2002 Nissan Altima 1N4AL11D02C114560 |

| Identity of Repossession Agency | | | |
|---|---|---|---|
| Full Legal Name or Authorized Trade Name of Repossession Agency:<br><br>Done Rite Recovery Inc. | | | Repossession Agency License Number:<br>124386R |
| Location of Whereabouts of Debtor's Personal Effects or Property | | | |
| Street Address:<br>3056 E 170th St | | | |
| City:<br>Lansing | State<br>Il | Zip Code:<br>60438 | Phone Number:<br>708-418-4315 |
| Hours of Operation:<br>Monday-Friday 12pm-4:30pm....By Appiontment ONLY | | | |

The purpose of this notice is to notify you as the Debtor that you, the Debtor, or your lawful designee, may appear to retrieve your personal effects or other property not covered by a security agreement contained in or on the repossessed collateral at the location listed above. The licensed repossession agency shall surrender said property to you, the Debtor, or your lawful designee, upon payment of any reasonably incurred expenses for inventory and storage. This notice does **NOT** serve as a notice to dispose of the personal property and effects not covered by a security agreement contained in or on the repossessed collateral.

| Verification | | |
|---|---|---|
| The undersigned certifies that all information presented in this notification is true, correct and complete and that copies of any documents attached as part of this notification are genuine. | | |
| Name of Recovery Manager:<br><br>Stephen Morandi | Signature of Recovery Manager: | Recovery Manager License Number:<br>XX81777MR |

# EXHIBIT H



Corporate Headquarters
25505 W Twelve Mile Rd
Southfield, MI 48034
248-353-2700

Henderson Servicing Center
& Training Facility
2400 Paseo Verde Pky, Ste 110
Henderson, NV 89074
702-990-2700

Southfield Servicing Center
20700 Civic Center Dr, Ste 300
Southfield, MI 48034
248-353-2700

June 16, 2014

**Account: 48634576**

**MELVIN L CONWAY**
**1508 E MARQUETTE RD**
**CHICAGO, IL 60637**

Dear **MELVIN L CONWAY**:

Enclosed you will find the account information you requested. If you have any questions, please

contact Credit Acceptance at (800) 634-1506.

Sincerely,

*Operations Support Department*

Operations Support Department
Credit Acceptance Corporation





*We change lives… one at a time!*

## RETAIL INSTALLMENT CONTRACT

(BUYER (and any CO-BUYER))

NAME MELVIN CONARY

NAME

ADDRESS 1588 MARGUETTE

CITY _____ STATE IL ZIP 60651

NAME _____ CREDITOR-SELLER

ADDRESS _____ 60160

CITY _____ STATE IL

ACCOUNT NO. 4863457G

Used 02 NISSAN  ALTIMA  4DR  GREEN

Vehicle Identification Number 1N4AL11D82C114560  EXEMPT

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The rate of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | Amount Financed The amount of credit provided to You or on Your behalf. | Total of Payments The amount You will have paid after You have made all payments as scheduled. | Total Sale Price The total cost of Your purchase on credit, including Your down payment of $ 1,888.00 is $ 14,866.20 |
|---|---|---|---|---|
| 18.99 % | $ 3,163.81 | $ 9,982.39 | $ 13,866.20 | $ 14,866.20 |

Payment Schedule: Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 36 | $ 362.95 | 8/06/12 and same date of each following month. |

Insurance: CREDIT LIFE INSURANCE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT, AND WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST. The term of the insurance shall be the same as the term of Your Contract.

| Type | Premium | Signature |
|---|---|---|
| Credit Life | $ N/A | Signature of Buyer Requesting Only Life Insurance / Signature of Buyer Requesting Only Life Insurance |
| Credit Disability | $ N/A | Signature of Buyer Requesting Life and Disability Insurance |

Security: You are giving a security interest in the goods or Vehicle being purchased.
Late Charge: If a payment is more than 10 days late, You will be charged 5% of the installment or installments in excess of $200 or $10 on installments of $200 or less.
Prepayment: If You pay off early, You may be entitled to a refund of part of the Finance Charge.
Additional Information: See below and the other side of this Contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### ITEMIZATION OF AMOUNT FINANCED

1. Cash Price (including accessories and improvements to the Vehicle) ... $ 8,700.00 (1)
2. Sales Tax ... $ 942.00 (2)
3. Down-Payment Calculation:
   - Cash Down Payment ... $ 1,888.00 (A)
   - Trade-in Description: Gross Trade-in ... $ N/A
   - Make: _____ Payoff Made by Seller ... $ N/A (C)
   - Model: _____
   - Net Trade-in (If negative number, insert "0" in line 3(D) and itemize difference in line 6(J) below) (B-C) ... $ 0.00
   - Total Down Payment ... (A + D) $ 1,888.00
4. Unpaid Balance of Cash Price (1 + 2 less 3) ... $ 7,742.00 (3)
5. Other Charges Including Amounts Paid to Others on Your Behalf:
   - *NOTICE: A portion of these charges may be paid to or retained by Us.)
   - A. Cost of Required Physical Damage Insurance Paid to Insurance Company* ... $ N/A (A)
   - B. Cost of Required Physical Damage Insurance Paid to Insurance Company* ... $ 1,760.00 (B)
   - B. Cost of Optional Extended Warranty or Service Contract Paid to Salem-427 Auto ... $ N/A (B)
   - C. Cost of Optional Credit Life Insurance Paid to Insurance Company* ... $ N/A (C)
   - D. Cost of Optional Credit Disability, Accident and Health Insurance Paid to Insurance Company* ... $ N/A (D)
   - E. Cost of Fees Paid to Public Officials for Perfecting, Releasing or Satisfying a Security Interest ... $ 151.39 (E)
   - F. Documentary Fee (See Documentary Fee Notice Below) ... $ 419.00 (F)
   - G. Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration ... $ N/A (G)
   - Other Charges (Seller must identify who will receive payment and describe purpose)*
   - H. _____ for lien or lease payoff ... $ N/A (H)
   - I. _____ for Optional GAP Protection ... $ N/A (I)
   - J. _____ ... $ 2,169.39 (J)
   - Total of Other Charges and Amounts Paid to Others on Your Behalf ... $ 9,982.39 (4)
6. Less Prepaid Finance Charge ... $ 0.00 (5)
7. Amount Financed - Unpaid Balance (4 + 5 less 6) ... $ 9,982.39 (6)

PROPERTY INSURANCE: You must insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US. This collision coverage deductible may not exceed $500. If You get insurance from or through Us, You will pay $ _____ for _____ of coverage. The premium is as shown.

| | | | N/A | |
|---|---|---|---|---|
| $ N/A | Deductible, Collision Coverage | | N/A | |
| $ N/A | Deductible, Comprehensive Coverage | | N/A | |
| $ | Fire-Theft and Combined Additional Coverage | | N/A | |

N/A

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.

OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT: Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by including below You are indicating that You voluntarily want to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional service warranty or service contract for details about coverage and condition.

Term _____ 24 _____ Company _____

Optional Extended Warranty or Service Contract, Price $ 1,760.00

GAP PROTECTION: Optional Guaranteed Auto Protection (GAP) is not required to obtain credit. GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line G of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost: $ _____ Term: _____ Provider: _____

Buyer's Signature _____ Date _____ Buyer's Signature _____ Date

DOCUMENTARY FEE. A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS AND PERFORMING SERVICES RELATED TO CLOSING OF A SALE. THE BASE DOCUMENTARY FEE BEGINNING JANUARY 1, 2009, WAS $150. THE MAXIMUM AMOUNT THAT MAY BE CHARGED FOR A DOCUMENTARY FEE IS THE BASE DOCUMENTARY FEE OF $150 WHICH SHALL BE SUBJECT TO AN ANNUAL RATE ADJUSTMENT EQUAL TO THE PERCENTAGE OF CHANGE IN THE BUREAU OF LABOR STATISTICS CONSUMER PRICE INDEX. THIS NOTICE IS REQUIRED BY LAW.

ARBITRATION NOTICE: PLEASE SEE THE REVERSE SIDE OF THIS CONTRACT FOR INFORMATION REGARDING THE ARBITRATION CLAUSE CONTAINED IN THIS CONTRACT.

ADDITIONAL TERMS AND CONDITIONS: THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION CLAUSE SET FORTH ON THE REVERSE SIDE HEREOF ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

### NOTICE TO BUYER

1. Do not sign this agreement before You read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the agreement You sign. 3. Under the law, You have the right, among others, to pay in advance the full amount due and to obtain under certain conditions a partial refund of the finance charge.

You agree to the terms of this Contract and acknowledge that You received a copy of this Contract with all blanks filled in and that You have read it and understand it.

RETAIL INSTALLMENT CONTRACT

Buyer's Signature: _____ Co-Buyer's Signature: _____

Co-Buyer: A co-buyer is a person who agrees to be primarily responsible for paying the entire debt and who (1) actually receives the Vehicle, or (2) is a person or spouse of the buyer, or (3) will be listed as an owner on the Vehicle's title. By signing above, the co-buyer confirms that the co-buyer will actually receive possession of the Vehicle or (1) will be listed as an owner on the Vehicle's title, or that the co-buyer is a parent or spouse of the buyer.

Guarantor: A guarantor is a person who may be responsible for paying the entire debt if We cannot collect the amount owed from the buyer and any co-buyer.

Guarantor's Signature: $ _____

I hereby guarantee the collection of the above described amount upon failure of the Seller named herein to collect said amount from the Buyer named herein.

Guarantor's Signature: $ _____

Seller: _____ By: _____ Title: _____ This Contract is signed by the Seller, Buyer(s) and Guarantor hereto on this 6TH day of JULY 2012.

NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth on reverse side of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD - SUITE 3000, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

Seller: _____ By: _____ Title: _____

LJ409 CREDIT ACCEPTANCE CORPORATION (3-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

ORIGINAL

## OTHER IMPORTANT AGREEMENTS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on the front of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Bad Check Charge.** You agree to pay Us a bad check charge of $25 (or such other amount permitted by applicable law) for any check or other instrument given by You to Us that is returned by Your bank because of insufficient funds or because Your bank account was closed.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Your Other Promises to Us.** You promise that:

- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle in a trade or business without our written consent.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Prepayment.** You have the right to prepay Your account balance early without a penalty. If You prepay in full, You may be entitled to a refund credit of part of the pre-computed finance charge. This credit will be calculated in accordance with the actuarial method. We will apply the credit to the amount You owe Us or if You paid Us more than the amount owed to Us under this Contract, We will retain a $25 acquisition fee before calculating any refund credit. We will not credit or refund amounts less than $1.00.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, however a prepayment will not excuse any later scheduled payments. You must still make all scheduled payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

**Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the Vehicle for the term of this Contract. Unless You provide Us with evidence of the insurance coverage required by Your agreement with Us or at any time during the term of this Contract You do not have physical damage insurance which covers both the interest of You and Us in the Vehicle, We may purchase insurance at Your expense to protect our interests in Your Vehicle. This insurance may, but need not, protect Your interests. The coverage that We purchase may not pay any claim that You make or any claim that is made against You in connection with the Vehicle. You may later cancel any insurance purchased by Us, but only after providing Us with evidence that You have obtained insurance as required by our agreement. If We purchase insurance for the Vehicle, You will be responsible for the costs of that insurance, including finance charges and any other charges We may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Your total outstanding balance or obligation. The costs of insurance may be more than the cost of insurance You may be able to obtain on Your own.

We are under no obligation to buy any insurance, but may do so if We desire. The finance charge We will impose will equal the Annual Percentage Rate shown on this Contract. You agree to pay all costs, charges, including finance charge in equal installments along with the payments shown on the Payment Schedule.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Optional Insurance, Maintenance or Service Contracts.** This Contract may contain charges for optional insurance, maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract or used to buy similar insurance which covers only our interest in the Vehicle. Any refunds for optional insurance, maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:

- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full.

**Starter Interruption Device and GPS.** You understand and agree that if You are in default, We may use any starter interruption device and/or global positioning system (collectively the Device) installed on the Vehicle to prevent the Vehicle from starting and/or to locate the Vehicle when permissible law and the terms of this Contract allow us to repossess the Vehicle. You agree that if the Vehicle is disabled, You will need to cure Your default in order to restart the Vehicle. You acknowledge that You have been provided with a toll free telephone number that You may call, no more than once per month, if the Vehicle is disabled but You need an emergency activation which will allow the Vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, as long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to pay to get it back (redeem) and may have the right to reinstate the Contract. If You have the right to reinstate the Contract, We will tell You the amount to pay, time period to reinstate the Contract and when that time period ends. Your right to redeem the Vehicle ends when We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.

**Sale of the Repossessed Vehicle.** Any notice that is required to be given to You of an intended sale or transfer of the Vehicle will be mailed to Your last known address, as reflected in our records, in a reasonable period before the date of the intended sale or transfer (or such other period of time as is required by law). If the Vehicle is sold, We will use the net proceeds of the sale to pay all or part of Your debt.

The net proceeds of the sale will be figured this way: Any charges for taking, holding, preparing for sale, and selling the Vehicle, and any attorney fees and court costs, if permitted by law, will be subtracted from the selling price.

If You owe Us less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. For example, We may be required to pay a lender who has given You a loan and has also taken a security interest in the Vehicle.

If You owe more than the net proceeds of sale, You will pay Us the difference between the net proceeds of sale and what You owe when We ask for it. If You do not pay this amount when asked, You may also be charged interest at the highest lawful rate until You do pay all You owe to Us.

**Collection Costs.** If We hire an attorney to collect what You owe and the attorney is not our salaried employee, You will also pay the attorney's reasonable fees and any court costs as permitted by law.

**Delay in Enforcing Rights and Changes of this Contract.** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, We can extend the time for making some payments without extending others. Any change in the terms of this Contract must be in writing and signed by Us. No oral changes are binding. If any part of this Contract is not valid, all other parts will remain enforceable.

> **WARRANTIES SELLER DISCLAIMS. YOU UNDERSTAND THAT THE SELLER IS NOT OFFERING ANY WARRANTIES AND THAT THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OF FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED BY THE SELLER, COVERING THE VEHICLE UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.**
>
> **THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT MAY BE PROVIDED BY THE VEHICLE MANUFACTURER.**

**USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

**Guía para compradores de vehículos usados.** La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**Interest After Maturity.** You further agree to pay interest at the Annual Percentage Rate stated on the front of this Contract or at the highest rate permitted by applicable law, on any amounts that remain unpaid after maturity of this Contract. For the purposes of this provision, maturity means the earlier of the date Your final payment is due or the date We accelerate the Contract.

**Judgment Rate.** Interest on any judgment awarded on this Contract will be at 9% or at the highest rate permitted by applicable law.

**Governing Law.** The terms of this Contract are governed by law of the state of the Seller's address shown on the front of this Contract, except to the extent preempted by applicable federal law.

### NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM: (1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY. (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.**

### ARBITRATION CLAUSE

**This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under this Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.**

**A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind.**

**If a Dispute arises, the complaining party shall give the other party a written Dispute Notice and a reasonable opportunity, not less than 30 days, to resolve the Dispute. Any Dispute Notice to You will be sent in writing to the address on this Contract (or any updated address You subsequently provide to Us). Any Dispute Notice to Us must be sent by mail to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 (or any updated address We subsequently provide to You). Any Dispute Notice You send must give Your Account Number, telephone number and address. Any Dispute Notice must explain the nature of the Dispute and the relief that is demanded. The complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests.**

**Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. The arbitrator shall decide whether a particular Dispute is subject to arbitration and any question as to the enforceability of all or part of this Arbitration Clause, except that the validity and effect of the Class Action Waiver (defined below) may be determined only by a court and not by an arbitrator. All statutes of limitation which otherwise would apply to an action brought in court will apply in arbitration. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and attorneys' fees and costs.**

**<u>You and We voluntarily and knowingly waive any right to a jury trial. You and We agree that all Disputes must be resolved on an individual basis through arbitration and that representative actions, such as class actions, are prohibited (this is referred to below as the "Class Action Waiver"), and regardless of any statements in this Arbitration Clause that state otherwise, the validity and effect of the Class Action Waiver may only be determined by a court and not by an arbitrator.</u> In the event there is an agreement to arbitrate claims or disputes that conflicts with this Arbitration Clause, whether such agreement is executed before, at the same time, or after this Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and Us.**

**Notwithstanding the foregoing, We retain the right to repossess the Vehicle upon Your default and to exercise any power of sale under this Contract. If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause. In the event that the Class Action Waiver is determined to be invalid or unenforceable, then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.**

**Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and We agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of Your choice. The addresses and websites of the organizations are: JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator. We will consider any good faith request You make to Us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if You cannot obtain a waiver of such fees from the administrator and We will not seek or accept reimbursement of any such fees. We will bear the expense of our attorneys, experts and witnesses, except where applicable law and this Contract allow Us to recover attorneys' fees and/or court costs in a collection action We bring. You will bear the expense of Your attorneys, experts and witnesses if We prevail in an arbitration. However, in an arbitration You commence, We will pay Your fees if You prevail or if We must bear such fees in order for this Arbitration Clause to be enforced. Also, We will bear any fees if applicable law requires Us to. The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Dispute based on the papers submitted by You or Us and/or through a telephonic hearing. However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You. Notice of the time, date and location shall be provided to You and Us under the rules and procedures of the arbitration organization selected.**

**The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§1 et. Seq. ("FAA"). However, if the amount of the Dispute exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the section of this Arbitration Clause which describes who will bear the costs for the initial proceeding before a single arbitrator.**

**It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.**

**<u>Your Right to Reject:</u> If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice which describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.**

### ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

ILLINOIS CREDIT ACCEPTANCE CORPORATION (3-10)

© 2010 Credit Acceptance Corporation.
All Rights Reserved.

# EXHIBIT I



HOME    SERVICES    ASSIGNMENTS    COVERAGE AREA    PROTECTION    CONTACT US

## Welcome to Done Rite Recovery Services, Inc.

Done Rite Recovery Services, Inc. is a full-service repossession agency located in Lansing, Illinois. We provide repossession and recovery services in the Chicago area, and 60 miles out to northwest Indiana.

Done Rite Recovery Services, Inc. has a fleet of 10 trucks to recover a variety of assets including cars and trucks, motorcycles and recreational vehicles, as well as farm and heavy equipment.

Done Rite Recovery Services, Inc. utilizes DRN's License Plate Recognition technology in recovering your collateral quickly and efficiently. LPR technology has become an invaluable tool in our industry.



Done Rite Recovery Services, Inc. is fully licensed, bonded, certified and insured. Our insurance coverage is with Scottsdale Insurance and National Casualty Company. Also, all of our employees are C.A.R.S. Certified and licensed. Done Rite Recovery Services, Inc. are members of RISC, Illinois Recovery Association, and American Recovery Association, and are covered by their Client Protection Bonds.

**Give Done Rite Recovery a call today for**
**Chicago, Illinois Repossession Services and Indiana Repossession Services**

**Done Rite Recovery Services, Inc.**
**3056 E 170th Street**
**Lansing, Illinois 60438**

EMAIL

**PH   708.418.4315**
**FAX   708.418.4425**

Check to see if your valuable collateral is in our coverage area by entering the zip code here.

Check Zip Code

**Repossession Services**
**Skip Tracing**
**Key Making**
**Transports**

**Chicago IL Repossessions**
**Indiana Repossessions**






Home | Services | Assignments | Coverage Area | Protection | Contact Us

Designed & Powered by Web Weaver USA



## Unlock Your Profit Potential!

Credit challenged (subprime) borrowers now make up 46% of the auto finance market.* Are you currently turning these customers away? Do you want to control financing and increase cash flow at time of delivery... and in the future? Do you spend too much time collecting payments and not enough time selling cars? If you answered yes, it's time to partner with us!

**The Credit Acceptance Advantage**
- 100% non-recourse financing!
- Say "Yes!" to everyone in 30 seconds or less
- Proven industry leader since 1972 (NASDAQ: CACC)

*Ex. Axle Martin 2012 National Consumer Credit Trends Report and CreditForecast.com

**or** Call 800-873-0512

Success Programs Technology Training Marketing
Stories

**Portfolio Program:** Receive an up-front advance and share principal and interest of payments collected. You control the financing and assign the contract to us for collection. This is, by far, our most popular program.

**Purchase Program:** Receive a higher up-front advance now, but no share of future collections. This tends to work well for newer, low mileage vehicles when additional cash flow is required now!

**Collection Only Program:** Receive a monthly check as we collect payments for your dealership. Use this program when you cannot provide the proof of stipulations needed to receive an advance. Receive a check beginning with your customer's first payment!

© 2007-2014 Credit Acceptance Corporation. All rights reserved.
User Agreement. NASDAQ : CACC

FORTUNE
100
BEST

Changing Lives!
Since 1972

# EXHIBIT J

Print this Listing

**SEARCH FOR LICENSEE BY PROFESSION:**

**THERE ARE 0 RECORDS WHOSE NAME CONTAINS:** Credit Acceptance Corpora

The name, Credit Acceptance Corpora, was not found

*HINT: You might try searching on part of the name;*
*e.g. "tyre" instead of "McIntyre"*

# EXHIBIT K

Print this Listing

6/24/2014     **Illinois Division of Professional Regulation**     8:18:53 PM

**SEARCH FOR LICENSEE BY PROFESSION:**

**THERE ARE 0 RECORDS WHOSE NAME CONTAINS:** Done Rite Recovery Servic

The name, Done Rite Recovery Servic, was not found

*HINT: You might try searching on part of the name;*
*e.g. "tyre" instead of "McIntyre"*