IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELVIN CONWAY, ) <br> THE STATE OF ILLINOIS *ex rel.* ) <br> MELVIN CONWAY, ) <br> ) <br> Plaintiffs, ) <br> ) Case No. 14-cv-5182 <br> v. ) <br> ) Judge Robert M. Dow, Jr. <br> DONE RITE RECOVERY SERVICES, INC., ) <br> AND CREDIT ACCEPTANCE CORP., ) <br> ) <br> Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff alleges violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1 *et seq.*, and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFDPA"), 815 ILCS 505/1 *et seq.*; he also brings a conversion claim under Illinois law. Before the Court are Defendants' motion to compel arbitration [18] and Plaintiff's "demand" that the Court deny the motion to compel arbitration [23].[1] For the reasons that follow, the Court grants Defendants' motion [18] in part, compelling arbitration and staying this litigation in the interim, and denies Plaintiff's demand [23]. The parties are instructed to file a joint status report within seven days after the arbitrator issues a final decision, after which time the Court will set this case for a further status hearing. Plaintiff's other pending motion to reset a prior hearing date [13] is stricken as moot.

---

[1] Defendant Credit Acceptance Corporation filed the pending motion to compel arbitration [18] on November 6, 2014, which Defendant Done Rite Recovery Services, Inc. joined on December 12, 2014 [34]. Credit Acceptance filed a corrected motion to compel arbitration on December 1, 2014 [30-1], because it inadvertently omitted the parties' arbitration agreement from the first motion. See [30].

1

**I.     Background**[2]

*Pro se* Plaintiff alleges that he purchased a 2004 Nissan Altima on July 6, 2012, taking out a loan from the dealer, Ideal Motors, Inc., to finance the purchase. Ideal Motors assigned the debt agreement to Defendant Credit Acceptance, Corp. ("CAC"). When Plaintiff defaulted on his loan, CAC made various collection attempts, giving rise to this complaint.

Plaintiff alleges that during the collection process, CAC made various misrepresentations in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFDPA"), 815 ILCS 505. More specifically, Plaintiff alleges that CAC misrepresented that the debt was a consumer loan; that he was obligated to repay the loan; that CAC was a debt collector attempting to collect a debt; that CAC had a right to collect payments from him; and that CAC had an enforceable security interest in Plaintiff's car, among other alleged misrepresentations.

Plaintiff also alleges that CAC's collection attempts violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* Specifically, he alleges that within 30 days of receiving the initial communication from CAC regarding the collection of his repossessed car, Plaintiff disputed the debt in writing. The writing allegedly contained an express revocation of any prior consent given to CAC to call him on his cell phone or any other phone. Yet CAC continued to call Plaintiff's cell phone, using automatic dialing and/or leaving automated messages.

On or around June 12, 2014, CAC allegedly assigned, transferred or otherwise engaged the services of Defendant Done Rite. On April 10, 2014, Done Rite repossessed Plaintiff's car for failure to make payments. Plaintiff allegedly redeemed the loan with a cash payment in an

---

[2] At the pleadings stage, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

amount proposed by CAC but did not receive his car in return. According to the complaint, neither CAC nor Done Rite were registered debt collectors, so their collection attempts and repossession violated the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425. Plaintiff also alleges that Defendants' repossession of his car constituted conversion.

CAC has attached the underlying Retail Installment Contract ("RIC") to its motion to compel arbitration and reply brief. The RIC includes an arbitration clause, providing the following:

> In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and US * * *
>
> A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, [and] the collection of amounts due under this Contract[.] * * * * * "Dispute" shall have the broadest meaning possible, and includes * * * claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. * * * You and We agree that all Disputes must be resolved on an individual basis through arbitration * * * *
>
> **<u>Your Right to Reject:</u>** If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice which describes the Contract and tells Us that You are rejecting this Arbitration Clause. * * * If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

[49-1 at 7].

The RIC also includes an assignment provision, in which Ideal Motors gave notice of its immediate assignment of the RIC to CAC.

## II. Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, was enacted against "centuries of judicial hostility to arbitration agreements * * * to place arbitration agreements upon the same

3

footing as other contracts." *Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007) (citations and internal quotation marks omitted). Reflecting a "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), the FAA provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, the standard for compelling arbitration is low. "Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4). A party moving to compel arbitration also may move a court to stay litigation pending arbitration. 9 U.S.C. § 3. Lastly, because Plaintiff has filed this action *pro se*, his pleadings are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); see also *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers") (citations and internal quotation marks omitted).

**III.    Analysis**

As a preliminary matter, the Court dismisses the state of Illinois as a plaintiff; Plaintiff Conway may not bring a claim on behalf of Illinois, contending that Illinois is bringing the claim on his behalf. Turning to Defendants' motion to compel arbitration, the first and second requirements to compel arbitration are at issue: (1) a written agreement to arbitrate, and (2) a dispute within the scope of the arbitration agreement. Plaintiff also opposes arbitration on the ground that it would be prohibitively expensive. The Court addresses each issue in turn.

### A. Agreement to Arbitrate

The Court first examines whether there is an agreement to arbitrate. At the outset, the parties contest whether the RIC attached to Defendants' motion to compel is properly before the Court. Plaintiff asks the Court to disregard the RIC because there is "no evidence existing upon the face of the record of this court supporting the purported RIC is an authentic document or that any signatures contained thereon are authentic and will be discovered when discovery is propounded." [43-1 at 4]. The Court is unpersuaded. A party moving to compel arbitration must "produce evidence sufficient to support a finding that the [arbitration agreement] is what the proponent claims it is." Fed. R. Evid. 901(a). See *Achey v. BMO Harris Bank, N.A.*, No. 13 C 7675, 2014 WL 4099139, at *3 (N.D. Ill. Aug. 19, 2014) (finding that, where an arbitration agreement's authenticity was in dispute, a defendant moving to compel arbitration was required to authenticate the agreement pursuant to Fed. R. Evid. 901); *Dillon v. BMO Harris Bank, N.A.*, 2014 WL 911950, at *1 (M.D.N.C. Mar. 10, 2014) (declining to order arbitration because certain defendants submitted the plaintiff's loan documents without presenting any evidence as to their authenticity). Federal Rule of Evidence 901(b) provides "examples only—not a complete list—of evidence that satisfies the requirement," including, "testimony that an item is what it is claimed to be," Fed. R. Evid. 901(b)(1), and "the appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," Fed. R. Evid. 901(b)(4). A proponent "is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *Achey v. BMO Harris Bank, N.A.*, 2014 WL 4099139, at *3 (N.D. Ill. Aug. 19, 2014) (quoting *Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885, 916 (N.D. Ill. 2004)) (quotation marks omitted).

Defendants have provided sufficient evidence authenticating the RIC. Fed. R. Evid. 901(a). In her affidavit, CAC employee Kimberly Kapanka asserts that she has custody and access to the business records of CAC relating to Plaintiff, including the RIC. [30-1 at 12]. She asserts that a true and correct copy of the RIC is attached to her affidavit. And she further states that, based on her review of CAC's records, CAC did not receive any written notice from Plaintiff rejecting the arbitration provision. [30-1 at 13]. Moreover, Plaintiff's name, car, address and signature on the RIC appear identical to those included in Plaintiff's pleadings. See Fed. R. Evid. 901(4). Taken together, this evidence is sufficient to show that the RIC is what Defendants contend it is. Accordingly, the RIC is properly before the Court.[3]

Plaintiff suggests that because he has "no prior recollection" of the agreement, the Court should permit the litigation to proceed to discovery, so a fact-finder can determine whether his signature is authentic. [43-1 at 4]. On a related note, he suggests that he cannot be bound by a contract that he does not remember signing. Neither argument as to authenticity or enforceability is persuasive. Again, Plaintiff's signature on the RIC appears consistent with his signature on the complaint; he does not dispute its authenticity. It is "a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them." *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992); accord *Founders Ins. Co. v. Father & Son Home Improvement II, Inc.*, 2011 WL

---

[3] Plaintiff's remaining arguments to the contrary are unpersuasive. For example, Plaintiff argues that Kapanka's statements are insufficient because she lacks personal knowledge of any agreement executed between Conway and Ideal Motors, Inc. Again, her personal knowledge regarding CAC's business records, which include the RIC, combined with the contents of the RIC itself, create more than sufficient evidence of authenticity. Plaintiff also incorrectly argues that her statements are hearsay. Her statements are not hearsay because she does not offer any out-of-court statements for the truth of the matter asserted. See Fed. R. Evid. 801. Lastly, Plaintiff argues that her statements are irrelevant. Kapanka's statements are relevant because they go to the authenticity of the RIC; they have a tendency to make the fact of an arbitration agreement "more * * * probable than it would be without the evidence" and the fact of the agreement itself is a "fact of consequence in determining the action." See Fed. R. Evid. 401.

2409308, at *4 (Ill. App. Ct. May 11, 2011); *Bunge Corp. v. Williams*, 359 N.E.2d 844, 847 (Ill. App. Ct. 1977). In the absence of any claim that the signature is not his, *i.e.*, that it is a forgery, the Court does not need further discovery to authenticate the agreement or determine that Plaintiff is bound by it. See *Castillo Flores v. Harbor Shipping & Trading Co., S.A.*, 2001 WL 740509, at *3 (E.D. La. June 29, 2001) (dismissing based on a forum selection clause in a contract a plaintiff could not remember signing because a failure to recall signing did not "create an issue of fact sufficient to stave off dismissal" and because a plaintiff's "failure to simply testify that the signature on the documents was not his own is taken as an admission that the signature on the documents is his"); *Singleton v. ASI Corp.*, 2001 WL 167911, at *2 (N.D. Tex. Jan. 19, 2001) (rejecting a similar argument by a plaintiff because the plaintiff failed to "suggest that he did not actually sign the paper" himself).

Lastly, Plaintiff argues that even if he is bound by the RIC's arbitration provision, Defendants have no right to enforce it as third parties to the contract. The Court disagrees. With respect to CAC, the plain language of the contract requires Plaintiff to arbitrate disputes with assignees and expressly identifies CAC as one such possible assignee. More specifically, the RIC requires Plaintiff to arbitrate not only with the seller but also with "Seller's assignee (including, without limitation, Credit Acceptance Corporation)." [49-1 at 7]. Consistent with the contract's plain language is the principle under Illinois law that an "assignee by acquiring the same rights as the assignor, stands in the shoes of the assignor." *Cmty. Bank of Greater Peoria v. Carter*, 669 N.E.2d 1317, 1319 (Ill. App. Ct. 1996); see also *Envtl. Barrier Co., LLC v. Slurry Sys., Inc.*, 2006 WL 2853830, at *4 (N.D. Ill. Sept. 29, 2006) ("a party who is the successor to a party to an arbitration agreement can enforce the arbitration agreement"); see also *Cox v. CA Holding Inc.*, 2015 WL 631393, at *16 (S.D. Ind. Feb. 13, 2015) (reasoning that an assignee may

7

enforce an arbitration provision because by purchasing the contract, it has purchased the right to arbitrate); *Laborers Int'l Union of N. America v. HSA Contractors, Inc.*, 728 F. Supp. 519, 524 n. 3 (E.D. Wis. 1989) (collecting cases finding contract assignees, though nonparties to an arbitration agreement, are bound by such an agreement).

Defendant Done Rite argues that it also is entitled to arbitration under the RIC, as it qualifies as a third party that provided debt collection services under the RIC as Credit Acceptance's agent. [34 at 4]. The arbitration clause in the RIC provides that

> "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) *or their employees, assignees, or any third party providing any good or services in connection with the origination, servicing and collection of amount due under the Contract* if such third party is named as a party between You and Us.

[30-1], Ex. A, Kapanka Decl. ¶ 4 (emphasis added). Plaintiff does not appear to dispute that Done Rite qualifies as an assignee or third party under this provision. In addition, Plaintiff alleges in his complaint that Credit Acceptance "assigned, transferred, or otherwise disclosed the alleged existence of a debt to a third party, engaging the services of Done Rite to collect Plaintiff's automobile," and that Done Rite was the party that collected his automobile. [8], Am. Compl. ¶ 33. The Court therefore concludes that disputes with both CAC and Done Rite are within the scope of the RIC arbitration clause. See also *Ellis v. Coventry Capital I LLC*, 2008 WL 4396349, at *6 (N.D. Ill. Sept. 24, 2008) (finding that defendant was entitled to seek arbitration, even though it was not a signatory to the agreement, because arbitration clause included third party servicing agents).

B.  **Scope of the Arbitration Agreement**

The Court next examines whether Plaintiff's claims fall within the substantive scope of the arbitration provision. "To determine whether a contract's arbitration clause applies to a

8

given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Once the Court determines that an arbitration agreement exists, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore*, 666 F.3d at 1032 (citing, in part, *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (U.S. 1983)). "To this end, a court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gore*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citations and quotation marks omitted).

Plaintiff argues that his claims fall outside the scope of arbitrable issues because they arise from the collection of the debt, not the debt agreement itself. The plain language of the arbitration provision indicates otherwise. It defines a "Dispute" as "any controversy or claim between You and Us arising out of *or in any way related to* this Contract, including, but not limited to, any default under this Contract, [and] the *collection of amounts due under this Contract*[.]" [49-1 at 7]. It further provides that "'Dispute' shall have the broadest meaning possible, and includes * * * claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories." *Id.* This language, read in light of the arbitration agreement as a whole, indicates that the seller intended to subject any disputes relating to the debt *or* its collection to arbitration, unless the consumer opted out within thirty days. Plaintiff's agreement is presumed based on his signature and his decision not to opt-out—a decision he does not contest. Moreover, the Court finds nothing in Plaintiff's response or the relevant case law indicating that his claims are inherently un-arbitrable. See, *e.g.*, *Gore*, 666 F.3d at 1034 (finding an ICFDPA claim arbitrable); *Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1207 (S.D. Cal. 2013) (finding a TCPA claim arbitrable); *Owings v. T-Mobile USA,*

9

*Inc.*, 978 F. Supp. 2d 1215, 1225 (M.D. Fla. 2013) (same); *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 871 (E.D. Wis. 2006) (finding an FDCPA claim arbitrable).

In addition, the parties agreed in the RIC that the arbitrator would determine whether and to what extent a dispute between the parties is subject to arbitration. Specifically, the arbitration clause states:

> A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. *The arbitrator shall decide whether a particular Dispute is subject to arbitration* and any question as to the enforceability of all or part of this Arbitration Clause[.]

[49-1], Ex. A, RIC (emphasis added). The Supreme Court has recognized that parties may delegate such threshold issues—including whether a particular dispute is within the scope of an arbitration agreement—to an arbitrator. See *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as * * * whether their agreement covers a particular controversy."). Accordingly, Plaintiff's contention that some or all of his claims fall outside the arbitration clause must be resolved by the arbitrator. See, *e.g.*, *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, -- F. Supp. 3d --, 2014 WL 2795827, at *5 (N.D. Ill. June 17, 2014) (explaining that court did not need to decide whether the parties agreed to arbitrate certain issues because agreement called for arbitrator to decide issues of arbitrability).

Lastly, Defendants move the Court to either stay or dismiss this action. Conceivably, Defendants could have brought a motion to dismiss under Rule 12(b)(3). See *Johnson v. Orkin, LLC*, 556 F. App'x 543, 544 (7th Cir. 2014) ("An arbitration clause is simply a type of forum-selection clause, and a motion seeking dismissal based on an agreement to arbitrate therefore should be decided under Rule 12(b)(3).") (internal citation omitted); *Soucy v. Capital Mgmt. Servs., L.P.*, 2015 WL 404632, at *3 (N.D. Ill. Jan. 29, 2015). Instead, they brought a motion

under the FAA, which authorizes a stay. Accordingly, the Court stays the litigation pending the outcome of the arbitration.[4]

### C. Costs of Arbitration

Lastly, Plaintiff appears to contend that the arbitration provision is unenforceable because arbitration would be prohibitively expensive. He briefly states, "Arbitration may involve very high payments to the arbitrator, and the consumer may have to share in those payments upfront." [43-1 at 3]. A Court may decline to compel arbitration "if a party would 'be saddled with prohibitive [arbitration] costs.'" *Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (quoting *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000)). However, a party opposing arbitration "must provide some individualized evidence that it likely will face prohibitive costs in the arbitration at issue and that it is financially incapable of meeting those costs." *Livingston*, 339 F.3d at 557. Plaintiff provides no such evidence. Accordingly, the Court declines to deny Defendants' motion on this ground.

## IV. Conclusion

For all of the reasons stated above, the Court grants Defendants' motion to compel arbitration [18], compelling arbitration and staying this litigation in the interim. Plaintiff's "demand" that the Court deny the motion to compel arbitration [23] is denied. The parties are instructed to file a joint status report within seven days after the arbitrator issues a final decision, after which time the Court will set this case for a further status hearing. Plaintiff's other pending motion to reset a prior hearing date [13] is stricken as moot.

---

[4] In any event, where all of the issues are subject to arbitration, the difference between a stay and a dismissal without prejudice to filing a motion to confirm or vacate the arbitration award is administrative only.

11

Dated: April 30, 2015                                  _____
                                                       Robert M. Dow, Jr.
                                                       United States District Judge