# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MELVIN CONWAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14-cv-5182 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| DONE RITE RECOVERY SERVICES, INC., ) | |
| and CREDIT ACCEPTANCE CORP., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion to enforce settlement agreement [69]. For the reasons that follow, the Court grants in part Defendants' motion to enforce settlement agreement [69]. Plaintiff is ordered to comply with the terms of the formal settlement agreement [69-3] that memorialize the settlement agreement created by the parties' emails on August 14, 2015. However, the Court declines to enforce the terms of the formal settlement agreement that were not agreed to in the August 14, 2015 email correspondence. Plaintiff's other pending motions [57], [76], and [78] are stricken as moot. The case is dismissed with prejudice. The Court will enter a final judgment and close the case.

**I.    Background**

Plaintiff Melvin Conway, representing himself *pro se* in this action, filed a complaint against Defendants Done Rite Recovery Services, Inc. and Credit Acceptance Corp. alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., the Illinois Collection Agency Act ("ICAA"), 225 ILCS 425/1 *et seq*., the Illinois Consumer Fraud and Deceptive

1

Practices Act ("ICFDPA"), 815 ILCS 505/1 *et seq.*, and conversion under Illinois state law. Plaintiff alleges that he purchased a 2004 Nissan Altima on July 6, 2012, taking out a loan from the dealer, Ideal Motors, Inc., to finance the purchase. Ideal Motors assigned the debt agreement to Defendant Credit Acceptance, Corp. ("CAC"). When Plaintiff defaulted on his loan, CAC made various collection attempts, giving rise to this complaint.

Plaintiff alleges that during the collection process, CAC violated the FDCPA and ICFDPA by misrepresenting that the debt was a consumer loan, that he was obligated to repay the loan, that CAC was a debt collector attempting to collect a debt, that CAC had a right to collect payments from him, and that CAC had an enforceable security interest in Plaintiff's car, among other alleged misrepresentations. Plaintiff further alleges that CAC violated the TCPA by calling Plaintiff's cell phone after Plaintiff expressly revoked any prior consent given to CAC to call him on his cell phone or any other phone.

On or around June 12, 2014, CAC allegedly assigned, transferred, or otherwise engaged the services of Defendant Done Rite, which repossessed Plaintiff's car on April 10, 2014 for failure to make payments. Plaintiff alleges that neither Defendant is a registered debt collector, so in his view, their collection attempts and repossession violated the ICAA. Finally, Plaintiff alleges that he redeemed the loan with a cash payment in an amount proposed by CAC but did not receive his car in return and that Defendants' repossession of his car constituted conversion.

Defendants moved to compel arbitration [see 18, 30, 34], arguing that the arbitration clause in the Retail Installment Contract requires Plaintiff to arbitrate this dispute. On April 30, 2015, the Court granted Defendants' motion, compelling arbitration and staying this litigation in the interim. [52.] Despite this ruling, Plaintiff filed a motion for summary judgment [57] on March 24, 2016.

On May 5, 2016, Defendants filed a motion to enforce settlement agreement [69], stating that shortly after the Court granted Defendants' motion to compel arbitration, the parties engaged in settlement discussions that culminated in a meeting of the minds on August 14, 2015. [69, at 1; see also Plaintiff's response 71, and Defendants' reply 82.] According to Defendants, on August 14, 2015, Plaintiff contacted counsel for Defendants via email and asked if he could still accept a previous settlement offer.[1] [69-1, at 2.] Later that day, counsel for Defendants allegedly advised Plaintiff that the offer was still on the table and restated the offer:

> 1) Waiver of the balance due on the account – per our records $5,889.58 is owed to date; and 2) $2,000.00
>
> conditioned upon receipt of your W-9, agreement to confidentiality, release of all claims, a dismissal of the case with prejudice as to both Credit Acceptance and Done Rite within 15 days of the receipt of the settlement check.
>
> ***
>
> We'd also agree to trade line deletion here with regard to credit reporting.

[69-1, at 1–2.] Defendants contend that Plaintiff accepted the offer to settle via email on the same day, stating "i [sic] accept offer please call." [69-1, at 1.]

Defendants further contend that on September 16, 2015, counsel for Defendants sent Plaintiff a formalized settlement agreement for Plaintiff to review and sign, along with a form W-9 for Plaintiff to complete and return. [69, at 2; 69-2, at 1.] Defendants contend that there are no material differences between the terms outlined in the August 14, 2015 emails and this formal settlement agreement. Plaintiff did not respond. Defendants contacted Plaintiff multiple times via email and mail asking Plaintiff to execute the settlement agreement and to return the W-9 so that Defendants could prepare the settlement check. Specifically, Defendants followed-up with Plaintiff on September 25, October 7, November 30, December 2, 2015, and February 8, 2016.

---

[1] Specifically, Plaintiff's email allegedly stated "hello long time no hear from anyway i dont want repo on my credit do the deal still stand." [sic] [69-1, at 2.]

[69, at 2; 69-4; 69-5; 69-6; 69-7; 69-8.] Plaintiff did not respond to nor acknowledge Defendants' messages.

Plaintiff filed a "judicial notice motion" [76] on May 27, 2016 and a "motion modifying notice of docket entry doc. 78" [79] on June 3, 2016.

**II.     Legal Standard**

Settlement agreements are contracts, thus their construction and enforcement are governed by ordinary contract principles. *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 618 (7th Cir. 2008), abrogated on other grounds by *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. (2016). In determining whether the parties reached an enforceable settlement agreement, the Court applies state contract law. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). Under Illinois law, an agreement is binding and enforceable where there has been an offer, an acceptance, and a meeting of the minds as to all material terms. *Seko Worldwide, LLC v. Four Soft Ltd.*, 503 F. Supp. 2d 1059, 1060–61 (N.D. Ill. 2007) (discussing Illinois law). "Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). The agreement must be sufficiently definite with respect to all material terms. *Seko Worldwide, LLC*, 503 F. Supp. 2d at 1061. Material terms are sufficiently definite when they enable a court to ascertain what the parties agreed to. *Beverly*, 817 F.3d at 333.

Additionally, "informal writings between parties can constitute a binding settlement agreement unless the parties decide to expressly condition their deal on the signing of a formal document." *Seko Worldwide, LLC*, 503 F. Supp. 2d at 1061 (citation and internal quotation marks omitted). Thus, Illinois courts recognize that "email exchanges can constitute a binding

4

agreement." *Transp. Ins. Co. v. Island Food Stores, Ltd.*, 2011 WL 209920, at *4 (N.D. Ill. Jan. 20, 2011) (citation and internal quotation marks omitted) (discussing Illinois law).

**III.    Analysis**

Applying these fundamental principles to the case at hand leads to the conclusion that by virtue of the exchange of emails on August 14, 2015, the parties entered into an enforceable settlement agreement. Defendants have attached the August 14, 2015 email correspondence as Exhibit 1 to their motion to enforcement settlement agreement. [69-1.] The email correspondence clearly shows that Defendants made a settlement offer and stated the terms of the offer, and Plaintiff unambiguously accepted the offer. [69-1.] The material terms of the settlement agreement are sufficiently definite, as Defendants clearly lay out that Defendants offered Plaintiff (1) waiver of the $5,889.58 balance due on his account, (2) a payment of $2,000, and (3) deletion of Plaintiff's trade line, conditioned upon Plaintiff (1) supplying Defendants with a W-9, (2) agreeing to confidentiality, (3) releasing all claims, and (4) dismissing the case with prejudice as to both Defendants within fifteen days of receipt of the settlement check. [69-1.] Although Plaintiff never signed the formal settlement agreement, the email exchange constitutes a binding agreement since the parties did not expressly condition their agreement on the signing of a formal document. See *Seko Worldwide, LLC*, 503 F. Supp. 2d at 1061; *Transp. Ins. Co.*, 2011 WL 209920, at *4.

In his response brief, Plaintiff mostly repeats arguments related to his original complaint. [See 71, at 2, 4, 7–10.] Given the Court's order compelling arbitration [52], these arguments are not properly before the Court. Plaintiff does make a few arguments that are responsive to Defendants' motion to enforce settlement agreement. First, Plaintiff "specifically denie[s]" contacting Defendants on "August 14, 2015, or ever, to ask about any terms other than the

demands already received and ignored by Defendant debt collectors." [71, at 6.] Plaintiff also denies that "the offer of settlement purported by Defendants was ever consented to by Plaintiff and in fact, no authorized contract purported by Defendants on August 14, 2015 or on any other date purported by Defendants debtors, may be presumed or implied to exist." [71, at 4.] According to Plaintiff, "the only settlement agreement before this court that it can ratify for damages are the demands accompanying Plaintiff(s) [sic] Motion for Summary Judgment." [71, at 3.]

The Court is unpersuaded. Defendants have produced the emails evidencing an enforceable agreement between the parties. Plaintiff does not directly challenge the authenticity of Defendants' Exhibit 1, which contains the August 14, 2015 email correspondence, but rather vaguely denies agreeing to Defendants' settlement offer. Plaintiff does not claim that Defendants fabricated the emails in Defendants' Exhibit 1 or that the email address shown in the correspondence, "melvinconway@ymail.com." is not his.[2] The Court concludes that the emails are sufficiently authenticated. In determining authenticity based on circumstantial evidence, a court can consider whether the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" indicate that the evidence is what the party purports it to be. Fed. R. Evid. 901(b)(4); see also *United States v.*

---

[2] The Court notes that Plaintiff made a similar argument in response to Defendants' motion to compel arbitration. Plaintiff argued that since he had "no prior recollection" of the Retail Installment Contract containing the arbitration provision, the Court should permit litigation to proceed to discovery so that a fact-finder can determine whether his signature on the agreement is authentic. The Court rejected this argument, explaining that Plaintiff's signature on the RIC appears consistent with his signature on the complaint. [52, at 6.] The Court further stated that "[i]n the absence of any claim that the signature is not his, i.e., that it is a forgery, the Court does not need further discovery to authenticate the agreement or determine that Plaintiff is bound by it." [52, at 7.] The same principle applies here: in the absence of any claim that the email address in Defendants' Exhibit 1 is not Plaintiff's or that Defendants fabricated the correspondence, the Court does not need further discovery or an evidentiary hearing to authenticate the settlement agreement created by the email correspondence or determine that Plaintiff is bound by this agreement.

*Smith*, 223 F.3d 554, 570 (7th Cir. 2000). Here, the email address shown in the correspondence matches Plaintiff's email address as evidenced by his own exhibits. [71, at Exhibit 4.] Additionally, Exhibits 4 and 6 attached to Plaintiff's response brief provide background and context for the August 14, 2015 correspondence and demonstrate that Plaintiff received the settlement terms from Defendants. Plaintiff's Exhibit 4 is an email from Defendants' counsel to Plaintiff dated April 3, 2015 that states the terms of the proposed settlement agreement. [71, at Exhibit 4.] Defendants contend that Plaintiff reached out to them on August 14, 2015 asking if "the deal still stand[s]," and the April 3, 2015 email in Plaintiff's Exhibit 4 shows the deal he was talking about. Plaintiff's Exhibit 6 is the formal settlement agreement upon which Plaintiff has printed "RESCINDED." This indicates that Plaintiff received Defendants' settlement messages. Taken together, this evidence is sufficient to show that the August 14, 2015 email correspondence in Defendants' Exhibit 1 is authentic, and the email correspondence creates an enforcement settlement agreement between the parties.

Next, Plaintiff seems to argue that he rescinded the settlement agreement. However, Plaintiff cannot rescind absent a valid reason. Plaintiff does not argue that there was collusion, fraud, mutual mistake, tortious or wrongful conduct, duress or coercion, or bad faith in procuring the settlement. See *Allstate Fin. Corp. v. Utility Trailer of Illinois, Inc.*, 936 F. Supp. 525, 528–29 (N.D. Ill. 1996); *Porter v. Chicago Bd. of Educ.*, 981 F. Supp. 1129, 1131 (N.D. Ill. 1997). Rather, he seems to argue that he should be entitled to rescind the settlement agreement because he prefers the settlement terms that he proposed in his motion for summary judgment. The Seventh Circuit has made clear that "a settlement agreement or stipulation voluntarily entered into cannot be repudiated by either party and will be summarily enforced by the Court." *Wilson*, 46 F.3d at 667 (citation and internal quotation marks omitted); see also *Glass v. Rock Island*

*Refining Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986) ("A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient[.]"); *Porter*, 981 F. Supp. at 1132 (noting that "a mere change of mind is not sufficient grounds for setting aside a settlement agreement" (citation and internal quotation marks omitted)). Plaintiff also argues that he can unilaterally rescind the Court's order compelling arbitration [52] and thus declares the Court's order a nullity. This argument also fails, as Plaintiff has no authority to "rescind" a Court order.[3] Thus, the Court concludes that the parties have entered into an enforceable settlement agreement.

Finally, Defendants argue that the formal settlement agreement [69-3] sent to Plaintiff on September 16, 2015 does not differ in any material way from the terms agreed to on August 14, 2015 and request that the Court enforce the formal settlement agreement. The Court agrees with Defendants that their act of tendering a formal, written, settlement agreement to Plaintiff on September 16, 2015 did not abrogate the settlement agreement reached on August 14, 2015. The email correspondence on August 14, 2015 created an enforceable settlement agreement because the parties did not expressly condition their deal on the signing of a formal document. *Seko Worldwide, LLC*, 503 F. Supp. 2d at 1061. The formal settlement agreement sent on September 16, 2015 simply memorializes the terms of the agreement in a formal document. Cf. *Porter*, 981 F. Supp. at 1131 ("The subsequent drafting of the written document was only to memorialize the terms of the oral agreement; *** a written settlement document [was not] a condition precedent to the final oral agreement."); *Allstate Fin. Corp.*, 936 F. Supp. at 528–29 (same).

To the extent that the formal settlement agreement merely memorializes the terms stated in the August 14, 2015 emails and clarifies ancillary matters of the agreement, such as the

---

[3] If the settlement agreement were not enforceable, the arbitration compelled pursuant to the Court's prior order [52] presumably would go forward.

timeframe in which Defendants must tender the settlement payment, and clearly identifies the parties to the agreement, Plaintiff's account, and the dispute being settled, the Court grants Defendant's motion to enforce the settlement agreement. However, the Court will not enforce any new terms added to the formal settlement agreement that were not contained in the August 14, 2015 email correspondence. See *Porter*, 981 F. Supp. at 1132; *Dhaliwal v. Woods Div., Hesston Corp.*, 1990 WL 53163, at *4 (N.D. Ill. Apr. 12, 1990), aff'd, 930 F.2d 547 (7th Cir. 1991), and aff'd, 931 F.2d 58 (7th Cir. 1991) ("[B]ecause a settlement agreement is a limitation on the rights of the parties, any such limitation must be discussed and agreed to by the parties for that term to be an enforceable part of that agreement."). Specifically, the following paragraphs of the formal agreement were not agreed to in the August 14, 2015 email correspondence and thus cannot be enforced:

- Paragraph 5d: Plaintiff relinquishes all rights, title and interest in the Vehicle to Credit Acceptance, including but not limited to any proceeds from the sale of the Vehicle[.] [69-3, at 3.]
- Paragraph 6: Plaintiff agrees and acknowledges that Credit Acceptance has no ability to delete any credit information directly and that Credit Acceptance's sole obligation shall be to submit the request to amend Credit Acceptance's reporting of the trade line associated with the Account. Plaintiff acknowledges that Credit Acceptance cannot guarantee, warrant, or take responsibility for the performance of the consumer reporting agencies with respect to changing, deleting, suppressing or making entries regarding any credit information or other information regarding him or the Account. Plaintiff represents that he understands the limitations on Credit Acceptance in this regard and that any action, omission and/or error by a consumer reporting agency shall not constitute a breach of this Agreement. [69-3, at 3.]
- Paragraph 7: Plaintiff acknowledges that the consumer reporting agencies' process for acting on Credit Acceptance's request may take up to 120 days to be completed, and that the responsibility to check the status of any credit reporting revision lies with Plaintiff. Provided that Credit Acceptance has requested revision of Credit Acceptance's reporting of the trade line associated with the Contract as it relates to him, Plaintiff hereby waives any and all claims, whether arising in contract or tort, common law or statute and/or federal or state law (including, but no limited to, claims for any damages, attorneys' fees and/or costs) against Credit Acceptance that may arise subsequent to the date of this Agreement and which arise out of or relate

9

to actions required to be taken by Credit Agreement with regard to the deletion of any negative trade line by Credit Acceptance. [69-3, at 3–4.]
- Paragraph 16: Plaintiff represents and warrants that he is of legal age and has no mental disability of any kind which would prevent his willful, knowing, and voluntary execution of this Release. Plaintiff further represents and warrants that no other person or entity has, or has had, any interest in the claims, demands, obligations or causes of action referred to in this Settlement Agreement, except as otherwise set forth herein; that Plaintiff has the sole right and executive authority to execute this Settlement Agreement; and that Plaintiff has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in the Settlement Agreement. Plaintiff warrants that he was the owner and sole user of the cell phone number at issue in this case during the time period when calls were made to this number. [69-3, at 6.]
- Paragraph 17: This Agreement is made in Michigan, and shall be governed by Michigan law. [69-3, at 6.]

## IV. Conclusion

For all of the reasons stated above, the Court grants in part Defendants' motion to enforce settlement agreement [69]. Plaintiff is ordered to comply with the terms of the formal settlement agreement [69-3] that memorialize the settlement agreement created by the parties' emails on August 14, 2015. However, the Court declines to enforce the terms of the formal settlement agreement that were not agreed to in the August 14, 2015 email correspondence. Plaintiff's other pending motions [57], [76], and [78] are stricken as moot. The case is dismissed with prejudice. The Court will enter a final judgment and close the case.

Dated: November 17, 2015

_____
Robert M. Dow, Jr.
United States District Judge